McCarthy, J.
Appeal from a judgment of the County Court of Montgomery County (Catena, J.), rendered March 26, 2012, upon a verdict convicting defendant of the crimes of robbery in the second degree and menacing in the second degree.
Defendant entered a convenience store, followed the cashier behind the counter and said, “Give me the money. Gun. Give me the money.” Two women who were standing near the cash register ran out of the store. The cashier gave defendant money and defendant left the store. One of the women called out to her brother, Jose Arroyo Jr., who was across the street, telling him that there had been a robbery. Arroyo chased defendant, who turned and pointed a weapon at him. Arroyo ducked, and defendant fled.
Defendant was charged with robbery in the second degree, petit larceny and menacing in the second degree in connection with this incident.* After a jury trial, he was convicted of robbery in the second degree and menacing in the second degree. County Court sentenced him, as a second felony offender, to a prison term of 13 years on the robbery conviction, to be followed by five years of postrelease supervision, and a concurrent term of one year in jail on the menacing conviction. On defendant’s appeal, we affirm.
As relevant here, “[a] person is guilty of robbery in the second degree when he [or she] forcibly steals property and when . . . [i]n the course of the commission of the crime or of immediate flight therefrom, he [or she] . . . [displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm” (Penal Law § 160.10 [2] [b]). Defendant argues that the conviction should be reduced to robbery in the third degree — which requires only proof that he forcibly stole property (see Penal Law § 160.05) — because the People failed to prove that he displayed what appeared to be a firearm during the commission of, or immediate flight from, the crime.
*1236 To prove the display element, “[t]he People must show that the defendant consciously displayed something that could reasonably be perceived as a firearm, with the intent of forcibly taking property, and that the victim actually perceived the display” (People v Lopez, 73 NY2d 214, 220 [1989]; see People v Baskerville, 60 NY2d 374, 381 [1983]; People v Boland, 89 AD3d 1144, 1146 [2011], lv denied 18 NY3d 955 [2012]; People v Thomas, 12 AD3d 935, 936 [2004], lv denied 4 NY3d 749 [2004]). While the object displayed need not in fact be a firearm (see People v Lopez, 73 NY2d at 220 [items found to be sufficient include an object held inside a coat, a towel wrapped around a black object, and a toothbrush held in a pocket]; People v Thomas, 12 AD3d at 936), “it must appear to the victim by sight, touch or sound that he [or she] is threatened by a firearm” (People v Baskerville, 60 NY2d at 381; see People v Tineo, 94 AD3d 507, 507 [2012], lv denied 19 NY3d 977 [2012]; Matter of Tafari S., 83 AD3d 1084, 1085 [2011]). The display requirement “cannot be read so broadly as to include mere statements that a robber is armed with a gun” (People v Lopez, 73 NY2d at 221; see People v York, 134 AD2d 637, 638-639 [1987], appeal dismissed 72 NY2d 868 [1988]). While such statements can give meaning to a robber’s otherwise ambiguous actions, such as “a hand consciously concealed in clothing” (People v Lopez, 73 NY2d at 221; see People v Toye, 107 AD3d 1149, 1150-1151 [2013], lv denied 22 NY3d 1091 [2014]; People v Boland, 89 AD3d at 1146), “words alone will not constitute a display of what appears to be a firearm” (People v Lopez, 73 NY2d at 221; see People v York, 134 AD2d at 638-639).
Here, the cashier testified that defendant said the word “gun” when demanding that she turn over the money, but she did not testify to witnessing any action on his part that would constitute a display of a firearm, nor did she testify that she believed he possessed a firearm. Thus, her testimony is insufficient to establish that defendant displayed a firearm during the robbery. But the inquiry does not end there. Although several cases address the issue as whether the victim perceived the gun (see e.g. People v Lopez, 73 NY2d at 220; People v Baskerville, 60 NY2d at 381; People v Boland, 89 AD3d at 1146), the statute does not mention to whom the apparent weapon must be displayed (see Penal Law § 160.10 [2] [b]; People v Turner, 96 AD3d 1392, 1393 [2012], lv denied 19 NY3d 1002 [2012]; but see People v Moon, 205 AD2d 372, 372 [1994], lv denied 84 NY2d 870 [1994]). The language of the statute — namely, that the display can occur in the course of “immediate flight” from the robbery and not just during the commission thereof — implies that the display may be directed at an individual other than the victim of the *1237 robbery, with the implication that the apparent weapon must be displayed for the purpose of allowing the defendant to deter someone from attempting to either recover possession of the stolen property or impede the defendant’s escape (Penal Law § 160.10 [2] [b]).
At trial, Arroyo testified that while he was chasing defendant, defendant “[b]randished a weapon” that “looked like a gun” as he was fleeing the scene. When asked what kind of gun, Arroyo responded, “I couldn’t say. At that time I thought it could have been a BB gun, but I didn’t want to take the risk.” Arroyo stated that it appeared “[l]ike a handgun,” and when defendant pointed it at him, he “ducked just in case [defendant] shot at [him].” On cross-examination, Arroyo testified that he thought it was a BB gun, a gun that shoots BBs and does not use gun powder, and “[a]fter the fact I said it might have looked like a BB gun, but I wasn’t taking the risk.” On redirect, Arroyo described what he saw in defendant’s hand as “resembl[ing] a pistol, handgun,” and on recross-examination he said it appeared to be a BB gun pistol or BB gun handgun.
Although a BB gun is not a firearm or pistol within the meaning of the statute (see People v Depaul, 101 AD3d 1735, 1735 [2012], lv denied 20 NY3d 1097 [2013]; People v Wilson, 283 AD2d 339, 340 [2001], lv denied 97 NY2d 644 [2001]; see also Penal Law § 265.00 [3]; see generally People v Howard, 22 NY3d 388, 401 [2013]), the question is whether defendant displayed “what appear[ed] to be,” and whether Arroyo perceived that object as, “a pistol, revolver ... or other firearm” (Penal Law § 160.10 [2] [b] [emphasis added]; see People v Depaul, 101 AD3d at 1735 [affirming conviction for menacing in the second degree where victim testified that “the BB gun appeared to be a real handgun and he feared for his life”]). While Arroyo’s testimony was somewhat inconsistent or unclear as to whether he believed that defendant had an actual firearm as opposed to a BB gun, the evidence, when viewed in the light most favorable to the People (see People v Bleakley, 69 NY2d 490, 495 [1987]; People v Toye, 107 AD3d at 1151), is legally sufficient to establish that defendant displayed what appeared to be a pistol or firearm while in immediate flight from the commission of a robbery.
A jury could reasonably find that a threatened individual was scared and believed that “the gun displayed might have been real,” even if the gun looked like it might be a toy gun and actually turned out to be a toy, because such a person is “not required to call the defendant’s bluff, but could resolve any doubts in favor of the risk presented” (People v Kaur, 204 AD2d 573, 573-574 [1994], lv denied 84 NY2d 869 [1994]). Similarly, *1238 although Arroyo thought that the weapon displayed by defendant looked like or could have been a BB gun, he also testified that it looked like a handgun, he did not want to take the risk and he ducked to avoid being shot by defendant. This reaction is the type that would be expected from a person who saw a gun that he or she thought was real. Thus, although a different verdict would not have been unreasonable, the guilty verdict on robbery in the second degree was not against the weight of the evidence (see People v Kaur, 204 AD2d at 573; see also People v Bleakley, 69 NY2d at 495).
With regard to the menacing conviction, as relevant here, “[a] person is guilty of menacing in the second degree when . . . [h]e or she intentionally places or attempts to place another person in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon, dangerous instrument or what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm” (Penal Law § 120.14 [1]). Defendant argues that his conviction should be reduced to menacing in the third degree — which requires only proof that he intentionally placed another person in fear of death, imminent serious physical injury or physical injury (see Penal Law § 120.15) — because the People failed to prove that he displayed a deadly weapon, dangerous instrument or what appeared to be a firearm.
Notably, the weapon at issue here was never recovered. Consequently, the only proof regarding the weapon was Arroyo’s testimony. As noted above, a BB gun is not a firearm (see People v Depaul, 101 AD3d at 1735; People v Wilson, 283 AD2d at 340; see generally People v Howard, 22 NY3d at 401). Further, where, as here, the People fail to prove that a gun was operable and loaded with ammunition, it will not qualify as a deadly weapon (see Penal Law § 10.00 [12]; People v Shaffer, 66 NY2d 663, 664 [1985]; People v Grice, 84 AD3d 1419, 1420 [2011], lv denied 17 NY3d 806 [2011]; People v Richard, 30 AD3d 750, 753 [2006], lv denied 7 NY3d 869 [2006]), nor will it constitute a dangerous instrument unless it was used in some other violent capacity during the crime (see Penal Law § 10.00 [13]; People v Swain, 46 AD3d 1157, 1158 [2007]; People v Wasson, 266 AD2d 701, 702 [1999]), which was not the case here. Similar to the robbery count, however, the evidence is legally sufficient to establish that defendant displayed what appeared to be a pistol or firearm, and the jury’s verdict finding him guilty of menacing in the second degree is not against the weight of the evidence (see People v Depaul, 101 AD3d at 1735; see also People v Wilson, 283 AD2d at 340; People v Kaur, 204 AD2d at 573).
*1239 Peters, EJ., Stein and Rose, JJ., concur. Ordered that the judgment is affirmed.

 Defendant was also charged with grand larceny in the fourth degree in connection with a separate incident at a different location, but that charge was not submitted to the jury.