People v Cloonan (2018 NY Slip Op 07366)





People v Cloonan


2018 NY Slip Op 07366


Decided on November 1, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 1, 2018

108339

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
PATRICK CLOONAN, Appellant.

Calendar Date: September 6, 2018

Before: Garry, P.J., Egan Jr., Mulvey, Aarons and Pritzker, JJ.


Stephen W. Herrick, Public Defender, Albany (Jessica M. Gorman of counsel), for appellant.
P. David Soares, District Attorney, Albany (Noel Mendez of counsel), for respondent.



MEMORANDUM AND ORDER
Pritzker, J.
Appeal from a judgment of the Supreme Court (Breslin, J.), rendered February 2, 2016 in Albany County, upon a verdict convicting defendant of the crimes of robbery in the second degree, grand larceny in the third degree and criminal possession of stolen property in the third degree.
Following a jury trial, defendant was convicted of robbery in the second degree, grand larceny in the third degree and criminal possession of stolen property in the third degree in connection with a robbery at an M & T bank in the City of Albany. He was sentenced, as a second felony offender, to an aggregate prison term of 15 years with five years of postrelease supervision. Defendant now appeals and we affirm.
Defendant argues that the verdict was not supported by legally sufficient evidence and was against the weight of the evidence because the People failed to establish that he displayed what appeared to be a weapon during the robbery. At trial, Nicole Sparks, an assistant branch manager at the bank, testified that, while she was working as a teller in the lobby of the bank, "somebody came in and . . . handed [her] a note saying that, this was a robbery, [he] needed $5,000 . . . in hundreds and [fifties], [she] had two minutes to give it to him and he showed [her] what appeared to be a weapon, a gun." Sparks testified that the object that appeared to be a gun had a long, black, metal barrel and that the individual was holding it close to his chest. While testifying, Sparks identified defendant as the perpetrator of the robbery and testified that he left the bank with $11,930 in cash, including money that Sparks gave to him from the bank's "bait pack" — currency that the bank can track using logged serial numbers.
During a 911 call, which was admitted into evidence, Sparks can be heard telling the operator that defendant displayed what appeared to be a weapon with a long barrel. Additionally, Alfred Martin, a detective, testified that he was working when he received information about the bank robbery, which had occurred a couple of blocks to the north of where he was situated. [*2]Martin testified that he reviewed photographic stills from surveillance video that captured the robbery and was able to observe the perpetrator's face and clothing. While Martin was stationed at an intersection in Albany, he observed an individual walking faster than normal and recognized him as wearing much of the same distinctive clothing and having the same features as the perpetrator. After spotting this individual, Martin exited his police vehicle and directed the individual to stop, at which point the individual picked up his pace. Martin testified that, when he grabbed this individual's hand, the individual pulled a black handgun from his waist band, which turned out to be a BB gun. Martin explained that, at first sight, the weapon looked like a real handgun. While doing a pat-down search of the individual, Martin spotted a large amount of currency in his pants' pocket and in his socks and that, when the individual exited the police car at the police station, several bills fell out of his left front pocket onto the floor of the police car. Martin identified that individual as defendant and confirmed that approximately $11,537 was recovered from his person, including 19 bills that matched the serial numbers of the bait money given by Sparks.
When viewing this evidence in the light most favorable to the People, there was legally sufficient evidence that defendant displayed what appeared to be a firearm during the robbery. Sparks' testimony to this effect, combined with her reporting this fact on the 911 call shortly after the robbery and the fact that a BB gun was found on defendant's person during his arrest, could lead a rational person to conclude that defendant displayed a firearm (see People v Kimbrough, 160 AD3d 541, 541-542 [2014], lv denied 31 NY3d 1150 [2018]; People v Colon, 116 AD3d 1234, 1237 [2014], lv denied 24 NY3d 959 [2014]; cf. People v Thomas, 12 AD3d 935, 936 [2004], lv denied 4 NY3d 749 [2004]). As to the weight of the evidence, although the surveillance video and photographic stills of the incident do not readily portray defendant displaying a firearm, the testimony at trial established that the reason for this was that the surveillance video captured only one image every few seconds and that there were gaps in time between each image. Under these circumstances — particularly when considering that Sparks told the 911 operator that defendant had a gun shortly after the robbery and remained consistent in this respect at trial, and defendant was found with a BB gun on his person when he was arrested — a different verdict would have been unreasonable and, as such, defendant's claim that the verdict was against the weight of the evidence is rejected outright (see People v Wheeler, 159 AD3d 1138, 1140 [2018], lv denied 31 NY3d 1123 [2018]).
Defendant also argues that, given the conflicting proof about whether he displayed a firearm during the robbery, a reasonable view of the evidence supported a finding that he committed robbery in the third degree, but not robbery in the second degree, and, as such, the lesser included charge of robbery in the third degree should have been given. The party seeking a lesser included offense charge "must demonstrate first 'that it is impossible to commit the greater crime without concomitantly committing the lesser offense by the same conduct' and, second, that there is 'a reasonable view of the evidence to support a finding that the defendant committed the lesser offense but not the greater'" (People v Defilippo, 152 AD3d 860, 861 [2017], quoting People v Van Nostrand, 85 NY2d 131, 135 [1995]; see CPL 1.20 [37]; 300.50 [1], [2]). Inasmuch as the People concede that robbery in the third degree is a lesser included offense of robbery in the second degree, the question is whether any reasonable view of the evidence would support a finding that defendant committed a robbery but did not display what appeared to be a firearm (see People v Rumrill, 40 AD3d 1273, 1275 [2007], lv denied 9 NY3d 926 [2007]; compare Penal Law §§ 160.10 and 160.15, with 160.05). Given Sparks' testimony that defendant displayed a firearm during the robbery, her report of same during the 911 call immediately after the robbery and defendant having a BB gun on his person when he was arrested, there is no reasonable view of the evidence that defendant did not display what appeared to be a firearm. As such, Supreme Court properly refused to charge the jury on the lesser included offense of robbery in the third degree (see People v Grayson, 138 AD3d 1250, 1252 [2016], lv denied 27 NY3d 1132 [2016]; People v Rumrill, 40 AD3d at 1275).
Defendant finally argues that his prison sentence is harsh and excessive. Although the maximum allowable sentence for a second felony offender was imposed (see Penal Law §§ 70.06 [6] [b]; 160.10), Supreme Court considered appropriate factors, including defendant's lengthy [*3]criminal history, both within and outside of New York — much of which relates to crimes of theft — the violent nature of the crime and defendant's failure to accept responsibility for the subject crimes during sentencing. Our review does not reveal any extraordinary circumstances or abuse of discretion warranting a reduction of the sentence (see People v Coley, 129 AD3d 1327, 1330 [2015], lv denied 26 NY3d 927 [2015]; People v Griffin, 122 AD3d 1068, 1071 [2014], lv denied 25 NY3d 1164 [2015]). Furthermore, while there is a six-year discrepancy between defendant's ultimate sentence after trial and that proposed in a plea offer, nothing in the record suggests that the imposition of the maximum term of imprisonment was vindictive or was punishment for defendant's assertion of his constitutional right to trial (see People v Anderson, 149 AD3d 1407, 1416 [2017], lv denied 30 NY3d 947 [2017]; People v Molina, 73 AD3d 1292, 1293 [2010], lv denied 15 NY3d 807 [2010]).
Garry, P.J., Egan Jr., Mulvey and Aarons, JJ., concur.
ORDERED that the judgment is affirmed.