People v Jackson (2020 NY Slip Op 07251)





People v Jackson


2020 NY Slip Op 07251


Decided on December 3, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 3, 2020

111147

[*1]The People of the State of New York, Respondent,
v
Bobby Jackson, Appellant.

Calendar Date: October 21, 2020

Before: Egan Jr., J.P., Mulvey, Aarons, Pritzker and Colangelo, JJ.


Theresa M. Suozzi, Saratoga Springs, for appellant.
Andrew J. Wylie, District Attorney, Plattsburgh (Rebecca L. Fox of counsel), for respondent.



Mulvey, J.
Appeal from a judgment of the County Court of Clinton County (Favreau, J.), rendered December 7, 2018, upon a verdict convicting defendant of the crime of criminal possession of a controlled substance in the third degree (two counts).
Defendant was charged by indictment with two counts of criminal possession of a controlled substance in the third degree. County Court denied defendant's pretrial motion to, among other things, suppress all physical evidence attributable to a search of defendant's person that was conducted pursuant to a search warrant. Following a trial, defendant was convicted of both counts. The court sentenced him, as a second felony drug offender, to two concurrent prison terms of nine years followed by three years of postrelease supervision, plus a fine. Defendant appeals.
County Court did not err in denying defendant's suppression motion, because the search warrant was supported by probable cause. Probable cause for a search warrant "may be supplied, in whole or in part, by hearsay information, provided that it satisfies the two-part Aguilar-Spinelli test requiring a showing that the informant is reliable and has a basis of knowledge for the information imparted" (People v Bahr, 35 AD3d 909, 910 [2006] [internal quotation marks, brackets and citations omitted], lv denied 8 NY3d 919 [2007]; see People v Griminger, 71 NY2d 635, 639 [1988]). "The People must produce a confidential informant for an ex parte hearing upon defendant's request where, as here, they rely on the statements of the confidential informant to establish probable cause" (People v Givans, 170 AD3d 1638, 1639 [2019] [citations omitted]; see People v Kirkley, 172 AD3d 1541, 1542 [2019], lv denied 33 NY3d 1106 [2019]). "The purpose of the Darden hearing is to verify the truthfulness of the police witness's testimony about his or her dealing with a known informant by ensuring that the informant exists and that he or she provided the police with information about the specified criminal activity" (People v Givans, 170 AD3d at 1639 [internal quotation marks and citations omitted]; see People v Matthews, 159 AD3d 1043, 1044 [2018]).
A confidential informant (hereinafter CI) appeared at the Darden hearing, thereby establishing his or her existence, and testified to providing evidence to the police that was consistent with information that was included in the search warrant application. In the application, a police officer attested that the information supplied by this CI was confirmed by an investigation conducted by police officers, including that two other CIs provided corroborative information regarding having purchased drugs in a similar manner and location, near defendant's vehicle and from a person matching defendant's general description. Thus, in addition to the officer's attestation that the first CI had provided credible information to the police in the past, information gleaned from the police investigation established that the first CI was reliable (see People v Mabeus, 63 AD3d 1447, 1450-1452 [2009]; People v Tocci, 52 AD3d 541, 541-542 [2008], lv denied 11 NY3d 858 [2008]). The application also revealed that the CI recently participated in a controlled drug buy involving defendant and one of his dealers, thereby establishing the CI's basis of knowledge, which was further elucidated during the Darden hearing. Additionally, the search warrant application included information about the movements of defendant's vehicle, as shown through GPS tracking of the vehicle pursuant to a separate warrant. These details, along with explanations from police officers comparing defendant's movements to those typical of narcotics traffickers, buttressed the CI's information that defendant would be returning to Clinton County with drugs on or about the date that the warrant was issued. Accordingly, County Court properly denied defendant's motion to suppress the physical evidence as the search warrant was supported by probable cause (see People v Bahr, 35 AD3d at 911).
To the extent that defendant complains that he was improperly subjected to a strip search, his argument is without merit. "[A] strip search must be founded on a reasonable suspicion that the arrestee is concealing evidence underneath clothing and the search must be conducted in a reasonable manner" (People v Turner, 178 AD3d 70, 75 [2019] [internal quotation marks and citations omitted]). Inasmuch as the police obtained a search warrant that allowed for separate searches of the vehicle and defendant's person, the unsuccessful search for contraband in the vehicle did not preclude a search of defendant himself. Defendant asserts that, because nothing was found when a police officer searched him at the side of the road following a stop of his vehicle, no further search was permissible. However, the roadside pat down was not completed due to defendant squirming and withdrawing his consent to the search once the officer reached defendant's waistband.[FN1] Although the police officer had the authority to continue the search based on the warrant, a full search on the side of the road in January would not have been reasonable or appropriate, especially considering that defendant was wearing multiple layers of clothing. The police were justified in detaining defendant for the purpose of transporting him to the police station to execute the search warrant in a private room, with male officers present, and handcuffing him during the transport for officer safety and to comply with police department procedures. Whereas a strip search may be conducted without a warrant where the police have reasonable suspicion that contraband may be concealed under clothing, here the police had obtained a warrant, based on probable cause, that permitted a search of defendant's person; the warrant, together with the circumstances, authorized a strip search (see People v Hall, 10 NY3d 303, 310-311 [2008], cert denied 555 US 938 [2008]; People v Hunter, 73 AD3d 1279, 1280-1281 [2010]).[FN2]
The jury's verdict was supported by legally sufficient evidence and was not against the weight of the evidence. "When considering a challenge to the legal sufficiency of the evidence, [this Court] view[s] the evidence in the light most favorable to the People and evaluate[s] whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (People v Hernandez, 180 AD3d 1234, 1235 [2020] [internal quotation marks and citations omitted], lv denied 35 NY3d 993 [2020]; see People v Bleakley, 69 NY2d 490, 495 [1987]). "In contrast, when undertaking a weight of the evidence review, we must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and, if not, then weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the [*2]verdict is supported by the weight of the evidence" (People v Hernandez, 180 AD3d at 1235 [internal quotation marks, brackets and citations omitted]; see People v Saylor, 173 AD3d 1489, 1490 [2019]). In assessing the weight of the evidence, this Court must view the evidence in a "neutral light and accord[] deference to the jury's superior opportunity to assess witness credibility" (People v Warrington, 155 AD3d 1450, 1452 [2017]).
As to the first count of criminal possession of a controlled substance in the third degree, a person is guilty "when he [or she] knowingly and unlawfully possesses . . . a narcotic drug with intent to sell it" (Penal Law § 220.16 [1]). As to the second count of the same crime for which defendant was convicted, a person is guilty "when he [or she] knowingly and unlawfully possesses . . . one or more preparations, compounds, mixtures or substances containing a narcotic drug and said preparations, compounds, mixtures or substances are of an aggregate weight of one-half ounce or more" (Penal Law § 220.16 [12]).
Defendant does not challenge the evidence establishing that the item recovered by police from the floor of the police station contained cocaine — a narcotic drug — with an aggregate weight greater than one-half ounce. Further, "the manner in which the cocaine was packaged, coupled with its weight and substantial street value, permitted a rational inference that defendant possessed the cocaine with the intent to sell" (People v Wheeler, 159 AD3d 1138, 1140 [2018], lv denied 31 NY3d 1123 [2018]). Defendant instead argues that there was no proof that he possessed the cocaine. We disagree. Three police officers each testified that, as defendant sat down to remove his outer pants during the strip search (despite being told to stand while removing his clothing), they heard a noise like a thud and then noticed a black item on the floor under the bench where defendant was sitting. That item consisted of cocaine in vacuum-sealed bags, which were then wrapped together in electrical tape. Each officer testified that the item was not on the floor prior to the search. Moreover, a video of the search — played to the jury first in its normal form and speed, then zoomed in and freeze-framed — depicts what appears to be the item falling from the back of defendant's pants as he begins removing them. Viewing the evidence in the light most favorable to the People, defendant's convictions are supported by legally sufficient evidence (see People v Sanders, 185 AD3d 1280, 1286 [2020], lv denied ___ NY3d ___ [Oct. 30, 2020]; People v Pope, 96 AD3d 1231, 1234 [2012], lv denied 20 NY3d 1064 [2013]). Although a different verdict would not have been unreasonable, as the officers testified that they did not directly see the item fall from defendant's person, we conclude, after viewing the evidence in a neutral light and deferring to the jury's credibility findings, that the verdict is not against the weight of the evidence (see People v Hilton, 185 AD3d 1147, 1149 [2020], lv denied 35 NY3d 1095 [2020]; People v Sanders, 185 AD3d at 1286; People v Pierre, 162 AD3d 1325, 1327 [2018], lv denied 32 NY3d 1007 [2018]).
Finally, considering the amount of cocaine that defendant possessed with the intent to sell it, along with his lengthy criminal history spanning numerous states, we will not disturb the sentence (see People v Brown, 169 AD3d 1258, 1260 [2019], lv denied 33 NY3d 1029 [2019]). However, we note that defendant was sentenced as a second felony drug offender rather than — as stated by County Court and reflected in court documents — a second felony offender (see Penal Law § 70.70 [1] [b]; compare Penal Law § 70.70 [3] [b] [i], with Penal Law § 70.06 [2], [3] [b]; [4] [b]). Accordingly, we direct County Court [*3]to issue an amended certificate of conviction and uniform sentence and commitment form reflecting the correct status (see People v Sanders, 185 AD3d at 1287-1288). Defendant's remaining contentions have been reviewed and found to be without merit.
Egan Jr., J.P., Aarons, Pritzker and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed, and matter remitted for entry of an amended uniform sentence and commitment form and an amended certificate of conviction.



Footnotes

Footnote 1: Defendant had provided consent to a search before he was informed that the police had obtained a search warrant.

Footnote 2: Although defendant complains that he was subjected to a visual body cavity search, the police were justified in conducting such a search once contraband fell out of defendant's pants, as it became more likely that he would be concealing other contraband on or in his body. Even so, because no additional contraband was found during the visual body cavity search, there was nothing that could have been suppressed as a result of that search.