People v Jones (2022 NY Slip Op 01069)





People v Jones


2022 NY Slip Op 01069


Decided on February 17, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:February 17, 2022

110377
[*1]The People of the State of New York, Respondent,
v
Santonio J. Jones, Appellant.

Calendar Date:January 11, 2022

Before:Garry, P.J., Lynch, Pritzker, Colangelo and Ceresia, JJ.

Marlene O. Tuczinski, Chatham, for appellant.
Michael A. Korchak, District Attorney, Binghamton (Benjamin Holwitt of counsel), for respondent.



Pritzker, J.
Appeal from a judgment of the County Court of Broome County (Cawley Jr., J.), rendered March 7, 2018, upon a verdict convicting defendant of the crime of robbery in the second degree (two counts).
On May 23, 2017, defendant was arrested as a suspect in an armed robbery that occurred in the evening hours on North Street in the Village of Endicott, Broome County. Defendant was thereafter charged by indictment with two counts of robbery in the second degree. Following a jury trial, defendant was convicted as charged. County Court sentenced defendant, as a second violent felony offender, to concurrent prison terms of 10 years, to be followed by five years of postrelease supervision. Defendant appeals.
Defendant contends that the verdict is not supported by legally sufficient evidence and is against the weight of the evidence because the People failed to prove that he intended to forcibly steal such property from the victims. Initially, the general motion to dismiss made by defendant was not "specifically directed" at the errors now raised upon appeal and, thus, his legal sufficiency argument is not preserved for appellate review (People v Baber, 182 AD3d 794, 795 [2020] [internal quotation marks and citation omitted], lv denied 35 NY3d 1064 [2020]). "Nevertheless, in reviewing defendant's challenge to the weight of the evidence, [this Court] necessarily determine[s] whether all of the elements of the charged crimes were proven beyond a reasonable doubt" (People v Barzee, 190 AD3d 1016, 1017 [2021] [internal quotation marks and citations omitted], lv denied 36 NY3d 1094 [2021]; see People v Baber, 182 AD3d at 795). "In conducting a weight of the evidence review, [this Court] must view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Barzee, 190 AD3d at 1017-1018 [internal quotation marks and citations omitted]; see People v Hilton, 185 AD3d 1147, 1148 [2020], lv denied 35 NY3d 1095 [2020]). In undertaking this analysis, "great deference is accorded to the fact-finder's opportunity to view the witnesses, hear the testimony and observe demeanor" (People v Walker, 191 AD3d 1154, 1156 [2021] [internal quotation marks, brackets and citations omitted], lv denied 37 NY3d 961 [2021]; see People v Jackson, 189 AD3d 1705, 1708 [2020], lv denied 36 NY3d 1098 [2021]).
As relevant here, "[a] person is guilty of robbery in the second degree when he [or she] forcibly steals property and when[,] . . . [i]n the course of the commission of the crime or of immediate flight therefrom, he [or she] . . . [d]isplays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm" (Penal Law § 160.10 [2] [b]). "A person forcibly steals property [*2]and commits robbery when, in the course of committing a larceny, he [or she] uses or threatens the immediate use of physical force upon another person for the purpose of . . . [c]ompelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny" (Penal Law § 160.00 [2]; see People v Lawrence, 141 AD3d 828, 830 [2016]). The Court of Appeals has held that "[a] defendant must intend that the threatened or actual use of physical force" compels the owner of such property to deliver it up (People v Smith, 79 NY2d 309, 312 [1992]). "Intent may be established by the defendant's conduct and the circumstances. The element of intent is rarely proved by an explicit expression of culpability by the perpetrator; and competing inferences to be drawn regarding the defendant's intent, if not unreasonable, are the exclusive domain of the finders of fact, not to be disturbed by [this Court]" (People v Gordon, 23 NY3d 643, 650 [2014] [internal quotation marks and citations omitted]; see People v Gordon, 119 AD3d 1284, 1286 [2014], lv denied 24 NY3d 1002 [2014]).
The facts are not complicated and are not largely disputed by defendant. The victims, both employees of the Village of Endicott Water Department, testified that they were working, "flushing" fire hydrants, at approximately 10:00 p.m. the night of the incident. They were sitting in a Village owned truck with a flashing light on the top when a male, who they identified as defendant, approached the vehicle and asked if either of them had any money. After telling him no, defendant pulled a gun out of the front of his waistband and stated that he "didn't want to have to rob anyone tonight." At that point the victims emptied their wallets and gave defendant three $1 bills. The victims described the gun as a black handgun and both testified that they feared for their lives. After turning the money over, defendant backed away from the vehicle and, before walking away, asked, "Are you sure." The victims waited until defendant was approximately 30 to 40 yards away from their vehicle before calling the police.[FN1] Police officers arrived on scene soon after and apprehended defendant.
An officer with the Village of Endicott Police Department testified that he responded to the armed robbery call and detained defendant until backup arrived. With assistance, the officer placed defendant under arrest and removed a pistol from defendant's waistband after having observed a "protrusion." The officer testified that one of the victims was brought over to the area where defendant was detained and gave a positive identification. Although the gun was later determined to be a BB gun, the officer testified that there was no carbon dioxide cartridge visible on defendant's gun on the evening of the incident. Other police officers who responded on the night of the incident testified similarly that the gun did not appear to be a BB gun [*3]and that the carbon dioxide cartridge was not visible.
Defendant testified that, the night of the incident, he was walking home around 10:00 p.m. when he observed "what looked like a BB gun on the ground." Defendant stated that he confirmed that the object was an air pistol and discovered that it was unloaded. He also testified that he decided to take the BB gun home for his children and that he stowed it in the right side of his waistband. Thereafter, defendant decided that he wanted to purchase a cigar but did not have enough money, so he approached a "work truck with lights flashing" and asked if the occupants had any spare change. Defendant recalled that the passenger stated that he did not have any spare change, so he then looked through the window past the passenger to ask the driver whether he had any change. When he did so, defendant observed that the passenger had been looking down at him and that is when defendant "followed [the passenger's] line of sight" and defendant "saw the air pistol protruding out of [his] shirt." Defendant responded by pulling the BB gun out from his waistband and stated, "Well, I'm not robbing anybody"; he opined that the weapon was on display for about two seconds and that the victims in the vehicle did not visibly react. Defendant asserted that he did not have time to inform the victims that the gun was not real because, as soon as he stated that he was not robbing anyone, the victims gave him the $3 they had between the two of them. Defendant responded by asking, "Are you guys sure? If this [is] your last, I don't take no man's last," which he asserted was him "giving the money back." Defendant stated that it was "not at all" his intention to rob the victims and that he walked off at a leisurely pace.
Given the foregoing, the People presented evidence that established that defendant consciously displayed an item that was subjectively perceived by the victims to be a weapon, thus compelling them to give over their money (see Penal Law §§ 160.00 [2]; 160.10 [2] [b]; People v Colon, 116 AD3d 1234, 1237-1238 [2014], lv denied 24 NY3d 959 [2014]). Although a different verdict would not have been unreasonable had the jury decided to credit defendant's testimony that he did not intend to forcibly steal from the victims, "these credibility issues were fully explored during cross-examination and were ultimately resolved by the jury in favor of the People" (People v Smith, 174 AD3d 1039, 1042 [2019], lvs denied 35 NY3d 1093, 1095, 1097 [2020]; see People v Porter, 184 AD3d 1014, 1017-1018 [2020], lv denied 35 NY3d 1069 [2020]; People v Colon, 116 AD3d at 1238). "According great deference to that credibility determination, and viewing the evidence in a neutral light, we find that the verdict is supported by the weight of the evidence" (People v Walker, 191 AD3d at 1158 [citations omitted]; see People v Jackson, 189 AD3d at 1709).
Defendant also asserts that he was deprived of a fair trial when County Court [*4]directed the People's investigator to enter the jury room for the purpose of demonstrating to the jurors how to operate a digital recorder. Initially, as defendant concedes, this argument is not preserved as he did not lodge an objection, and in fact consented, to the procedure. However, he urges that, as this demonstration violates CPL 310.10 (1), it constitutes a mode of proceedings error that does not require preservation. We agree. Pursuant to CPL 310.10 (1), a deliberating jury must be "under the supervision of a court officer" or "an appropriate public servant" and, "[e]xcept when so authorized by the court or when performing administerial duties with respect to the jurors, such court officer[] or public servant[] . . . may not speak to or communicate with [the jurors] or permit any other person to do so" (emphasis added). Certainly, the People's investigator cannot be said to be an appropriate public servant to interact with the jury in the deliberation room. Also troubling is the lack of a record of what occurred while the investigator was in the deliberation room. Indeed, the "right to a trial by jury in criminal cases is 'fundamental to the American scheme of justice' and essential to a fair trial. At the heart of this right is the need to ensure that jury deliberations are conducted in secret, and not influenced or intruded upon by outside factors" (People v Rivera, 15 NY3d 207, 211 [2010], quoting Duncan v Louisiana, 391 US 145, 148-149 [1968]). Given that the procedure that occurred here, allowing a representative of the People to interfere in the jury's secret deliberations, goes "to the essential validity of the process and [is] so fundamental that the entire trial is irreparably tainted" (People v Mack, 27 NY3d 534, 541 [2016]), we must reverse and remit for a new trial. In light of this determination, we need not reach defendant's remaining arguments.
Garry, P.J., Lynch, Colangelo and Ceresia, JJ., concur.
ORDERED that the judgment is reversed, on the law, and matter remitted to the County Court of Broome County for a new trial.



Footnotes

Footnote 1: A portion of the 911 call was admitted into evidence.