People v Saunders (2024 NY Slip Op 05843)

People v Saunders

2024 NY Slip Op 05843

Decided on November 21, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 21, 2024

112177
[*1]The People of the State of New York, Respondent,
v
Michael K. Saunders, Appellant.

Calendar Date:October 9, 2024

Before:Garry, P.J., Reynolds Fitzgerald, Fisher, McShan and Powers, JJ.

Pamela B. Bleiwas, Ithaca, for appellant.
Kirk O. Martin, District Attorney, Owego (Cheryl Mancini of counsel), for respondent.

Reynolds Fitzgerald, J.
Appeal from a judgment of the County Court of Tioga County (Gerald A. Keene, J.), rendered August 26, 2019, upon a verdict convicting defendant of the crimes of criminal sale of a controlled substance in the third degree (four counts), criminal possession of a controlled substance in the third degree (five counts), criminal possession of a controlled substance in the seventh degree (five counts) and criminally using drug paraphernalia in the second degree (two counts).
In October 2018, defendant was charged by indictment with numerous drug crimes stemming from the sale of heroin to two confidential informants (hereinafter CI 1 and CI 2) as part of controlled buy operations that occurred on August 14, 2018, September 5, 2018, September 11, 2018 and September 27, 2018. Based on these sales, a search warrant was executed at defendant's apartment, during which police found, among other things, heroin, glassine envelopes, baggies, scales, sifters, a large sum of cash, as well as other drug paraphernalia. Defendant was subsequently taken into custody and interviewed by police. A Huntley hearing was held, and at the conclusion of the hearing defendant moved to suppress the statements he made to the police, which County Court denied.
Following a jury trial, defendant was found guilty of four counts of criminal sale of a controlled substance in the third degree, five counts of criminal possession of a controlled substance in the third degree, five counts of criminal possession of a controlled substance in the seventh degree and two counts of criminally using drug paraphernalia in the second degree. County Court thereafter sentenced defendant, as a second felony offender, to prison terms of 12 years, to be followed by three years of postrelease supervision, upon his convictions of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree and to lesser prison terms for the remaining convictions, and all prison terms were ordered to run concurrently. Defendant appeals, and we affirm.
Defendant first contends that his convictions are against the weight of the evidence. "When undertaking a weight of the evidence review, this Court must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and, if not, then it must weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence. When conducting this review, this Court considers the evidence in a neutral light and defers to the jury's credibility assessments" (People v Montgomery,229 AD3d 899, 900 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 42 NY3d 972 [2024]; see People v Jones, 202 AD3d 1285, 1286 [3d Dept 2022]).
At trial, various State Police investigators testified regarding the controlled [*2]buy operations and subsequent search of defendant's apartment. These investigators described searching each CI prior to each controlled buy, that immediately after returning the CIs handed them a substance which was ultimately determined to be heroin and that law enforcement thoroughly searched the CIs after each buy. The investigators also described how they surveilled each controlled buy utilizing five to eight investigators while closely monitoring the CI's movements, except for when the CI entered defendant's apartment. Lastly, the investigators explained that at the conclusion of the controlled buy operations, a search warrant was obtained for defendant's apartment and, upon execution of the warrant, they discovered, among other things, a scale, glassine envelopes, baggies and cutting materials, all items used in processing and distributing narcotics.
CI 1 testified that he knew defendant approximately one year and often stayed at his apartment. On August 14, 2018, he was contacted by CI 2 seeking to buy heroin. He was picked up by CI 2 and an undercover agent. CI 1 subsequently contacted defendant seeking to purchase heroin. All three of them traveled to defendant's apartment and, with the money provided to him, he purchased a bun from defendant.[FN1] He gave the bun to CI 2, who turned it over to the undercover officer. CI 1 testified that he was searched prior to and after the controlled buy.
CI 2 testified to his extensive criminal record — including his long-term history of drug addiction and dealing. He further admitted that he contacted the District Attorney's office seeking to assist the State Police in an effort to help him with his pending criminal charges. CI 2 corroborated CI 1's account of the August 14, 2018 controlled buy. As to the September 5, 2018 controlled buy, CI 2 testified that he contacted a third person to purchase a bundle of heroin. He arrived at the person's apartment and, shortly thereafter, defendant joined them. CI 2 paid $100 to defendant and received a heroin bundle, which he turned over to the police. CI 2 further testified that on September 11, 2018, he called defendant looking to purchase two bundles of heroin. He went to defendant's apartment and gave him $100 in exchange for the two bundles. After the purchase, he drove directly to a predetermined meeting site and gave the bundles to the State Police. Finally, as to the September 27, 2018 controlled buy, CI 2 testified that he once again contacted defendant to procure heroin. On that date, defendant explained that he was not available to deliver it but would have it delivered by his girlfriend. Defendant's girlfriend met CI 2 in front of a supermarket and he gave defendant's girlfriend $100. In exchange, she gave him a plastic bag containing some movies and the heroin. CI 2 corroborated CI 1's testimony that prior to and after each controlled buy he was searched by the State Police. A State Police forensic scientist testified that he conducted testing on the [*3]substances purchased by the CIs from defendant and that the substances contained heroin.
Defendant took the stand and argued that he was not living in the apartment where some of the controlled buys took place; rather, it was his girlfriend's apartment. He denied selling heroin to CI 1 and explained that he was purchasing Percocets from him. Defendant further testified that CI 2 is not truthful, is an experienced criminal and that he never sold drugs to him.
Based on the foregoing, a different verdict would not have been unreasonable as the jury could have rejected the CIs' testimony in favor of defendant's testimony. Defendant asserts that CI 2's testimony should be accorded little, if any, weight due to the fact that he is an admitted drug addict who exhibited a poor memory during trial and was motivated to assist the police in an effort to obtain favorable treatment related to outstanding criminal charges against him. However, defendant thoroughly cross-examined CI 2 regarding his self-interest in assisting law enforcement, his extensive criminal history and his substance abuse issues. Credibility determinations are clearly within a jury's province and, although CI 2 had some difficulties remembering certain facts, the members of the jury credited CI 2's testimony, while rejecting defendant's. According deference to the jury's credibility determinations and viewing the evidence in a neutral light, we are satisfied that the verdict is not against the weight of the evidence (see People v Doane, 212 AD3d 875, 880 [3d Dept 2023], lv denied 39 NY3d 1154 [2023]; People v Sumpter, 191 AD3d 1160, 1163 [3d Dept 2021], lv denied 37 NY3d 968 [2021]; People v Arce-Santiago, 154 AD3d 1172, 1174-1175 [3d Dept 2017], lv denied 30 NY3d 1113 [2018]; People v Johnson, 151 AD3d 1462, 1465 [3d Dept 2017], lv denied 30 NY3d 1106 [2018]).
Defendant next asserts that County Court erred in denying suppression of the statements he made during his interview at the police barracks because the police failed to repeat the Miranda warnings given to him at the time of his arrest, before commencing the interview. We disagree. "[O]n a motion to suppress, the People bear the burden of proving beyond a reasonable doubt that the defendant's statements to police were voluntarily given, including that any custodial interrogation was preceded by the administration and the defendant's knowing waiver of his or her Miranda rights" (People v High, 200 AD3d 1209, 1210 [3d Dept 2021] [internal quotation marks, brackets and citations omitted], lv denied 37 NY3d 1161 [2022]). "Determining whether a statement is voluntary is a factual issue governed by the totality of the circumstances and the credibility assessments of the suppression court in making that determination are entitled to deference" (People v Weber, 226 AD3d 1158, 1160 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 42 NY3d 931 [2024]; accord People v High, 200 AD3d at 1210).
"Where a person in police [*4]custody has been issued Miranda warnings and voluntarily and intelligently waives those rights, it is not necessary to repeat the warnings prior to subsequent questioning within a reasonable time thereafter, so long as the custody has remained continuous" (People v Lowin, 36 AD3d 1153, 1154-1155 [3d Dept 2007] [internal quotation marks, brackets and citations omitted], lv denied 9 NY3d 847 [2007]; accord People v Booker, 141 AD3d 834, 836 [3d Dept 2016], lv denied 28 NY3d 1026 [2016]). A State Police investigator testified at the suppression hearing, and a review of the record establishes that on October 4, 2018 at 5:00 a.m., a search warrant was executed at defendant's apartment. When the State Police investigator arrived on the scene, defendant was in handcuffs and the investigator read him his Miranda warnings. The investigator testified that defendant was awake, coherent, did not appear to be under the influence of any substance and answered yes to both questions relative to whether he understood his rights and wished to talk to him. The investigator further testified that defendant, in response to being asked if he knew why the police were there, answered yes and motioned to the narcotics and cash located on the bed. Defendant was then escorted out of the apartment, placed in a marked police vehicle and taken to the police barracks. Approximately 3½ hours later, the same investigator entered the interrogation room and asked defendant, "[b]efore I talk to you, do you remember those Miranda warnings I read to you earlier? Do you need me to read them to you again?" Defendant stated "[n]o" and began answering questions. The time between defendant's arrest and his interview was not unreasonable. Moreover, the video of the interview shows that defendant was aware of his rights and the continuity of the interrogation, and was coherent and alert. Viewing the totality of the circumstances and deferring to County Court's credibility determination, County Court properly denied defendant's motion to suppress his statements made during the interview as they were sufficiently close in time to the Miranda warnings and did not violate his due process rights (see People v Booker, 141 AD3d at 836; People v Carelli, 41 AD3d 1092, 1093 [3d Dept 2007]; People v Lowin, 36 AD3d at 1155).
Regarding defendant's challenge to the severity of the sentences imposed, we do not find the sentences to be unduly harsh or excessive and we decline defendant's request to invoke our interest of justice power to reduce them (see People v Imes, 226 AD3d 1080, 1084 [3d Dept 2024], lv denied 41 NY3d 1019 [2024]; People v Sharpton, 225 AD3d 1097, 1098 [3d Dept 2024], lv denied 41 NY3d 1020 [2024]; People v Robinson, 217 AD3d 1269, 1269 [3d Dept 2023]).
Garry, P.J., Fisher, McShan and Powers, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: A bun, also called a bundle, refers to 10 little baggies of heroin packaged together.