THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JESSE SAMPSON, Respondent. [891 NYS2d 518]—

Cardona, P.J.

On May 21, 2008, Investigator Arthur Hyde of the Rensselaer County District Attorney's Office Drug and Gang Task Force received a call from someone at the Rensselaer County Sheriff's Department relaying that the Department had received information indicating that defendant was bringing drugs from the New York City area to a specified address on St. Vincent Street in the City of Troy, Rensselaer County. Hyde was asked to proceed to the area of Canal Street and Spring Avenue and look for a 2006 Saturn. Before he could do so, Hyde was contacted again and told to disregard the previous message because the Sheriff's Department had received further information indicating that defendant had already arrived in Troy. Hyde then offered to drive by the St. Vincent Street address to look for a Dodge Stratus that defendant was reportedly driving.

When Hyde arrived in the vicinity, he did not observe either vehicle but did notice a taxi in the driveway. As the taxi drove past him a few minutes later, he observed defendant, with whom he was familiar, in the passenger seat. He followed the taxi for several blocks, then put on his lights and pulled it over. He asked defendant to exit the taxi and advised him that people at the Sheriff's Department wanted to speak to him.

At that point, Hyde noticed a fist-sized bulge in defendant's sweatshirt pocket. He told defendant that he was going to pat him down. As he reached for defendant with both hands, defendant asked if he was under arrest. When Hyde said that he was not, defendant said, "[t]his is bullshit," and he pushed Hyde and ran. Hyde pursued him, a struggle ensued during which Hyde pulled off defendant's shirt and sweatshirt, and defendant pulled Hyde's jacket partially over his head. Defendant got away and continued to flee until another officer arrived with a canine. When defendant was told to get down or the canine would be released, he dropped to the ground, then threw a baggie into a nearby sewer drain. That baggie, and another that he discarded during his flight, were field tested and determined to contain crack cocaine. Defendant was placed under arrest and removed to the Rensselaer County Jail, where he made an incriminating statement.

Defendant was charged with criminal possession of a controlled substance in the second degree and resisting arrest. Following a hearing, County Court granted his motion to suppress the drugs and his statement as the fruits of an illegal search and seizure. The People appeal pursuant to CPL 450.50.

It is well settled, and the People concede, that Hyde's stop of the taxi was an impermissible seizure unless, at the time he executed the stop, he had "a *reasonable* suspicion that its occupants had been, [were] then, or [were] about to be, engaged in conduct in violation of the law" (*People v Sobotker*, 43 NY2d 559, 563 [1978]; *see People v Spencer*, 84 NY2d 749, 752-753 [1995]). The People's contention that the tip received by the Sheriff's Department and relayed to Hyde provided reasonable suspicion for his stop of the taxi is not persuasive.

Hyde conceded during his testimony that he did not know the identity of the informant, nor could he even recall which member of the Sheriff's Department relayed the tip to him. While an anonymous tip may justify a request for information (*see People v McIntosh*, 96 NY2d 521, 527 [2001]), it will not support a reasonable suspicion of criminal activity unless it is " 'reliable in its assertion of illegality, not just in its tendency to identify a determinate person' " (*People v William II*, 98 NY2d 93, 99 [2002], quoting *Florida v J.L.*, 529 US 266, 272 [2000]). Specifically, the tip must contain "predictive information—such as information suggestive of criminal behavior—so that the police can test the reliability of the tip" (*People v Moore*, 6 NY3d 496, 499 [2006]).

In this case, the anonymous tip that was relayed to Hyde identified defendant and indicated that he was bringing drugs

to Troy from the New York City area, but did not provide any basis for that knowledge that would indicate that it was reliable. Additionally, it is unclear from the record whether the informant also identified the 2006 Saturn or the Dodge Stratus, or whether the descriptions of those cars came from another source. However, even if that arguably "predictive information" was obtained from the informant, Hyde was unable to verify it since he saw neither of those vehicles in the vicinity of St. Vincent Street. Indeed, Hyde testified that defendant was already in the taxi at the time he first drove past the St. Vincent Street address. Moreover, Hyde did not testify to independently witnessing any other circumstances indicative of criminal activity prior to his stopping of the taxi a few minutes later. On this record, we agree with County Court that the anonymous tip did not give rise to a reasonable suspicion of criminal activity (*see People v Heapps*, 13 AD3d 107, 108 [2004], *lv denied* 4 NY3d 799 [2005]; *People v Letts*, 180 AD2d 931, 933 [1992], *appeal dismissed* 81 NY2d 833 [1993]; *People v Clark,* 133 AD2d 955, 956 [1987]). Absent reasonable suspicion, Hyde's act of stopping the taxi constituted an impermissible seizure of defendant (*see People v Sobotker*, 43 NY2d at 564-565).

The People also argue that once Hyde spotted the bulge in defendant's sweatshirt pocket, it was permissible for him to pat defendant down for the purpose of officer safety. We do not agree. "Where a police encounter is not justified in its inception, it cannot be validated by a subsequently acquired suspicion" (*People v William II*, 98 NY2d at 98 [citation omitted]; *see People v McIntosh*, 96 NY2d at 527). In any event, "a pocket bulge, unlike a waistband bulge, 'could be caused by any number of innocuous objects' " not indicative of criminal activity (*People v Holmes*, 81 NY2d 1056, 1058 [1993], quoting *People v De Bour*, 40 NY2d 210, 221 [1976]). Here, Hyde conceded that the fist-sized bulge in defendant's pocket could have been "a baseball" or "any number of things." Furthermore, Hyde had no indication that defendant was suspected of being armed or even that he was generally known to carry a weapon.

Finally, we are not persuaded by the People's argument that defendant's act of pushing Hyde dissipated any taint resulting from the seizure, thereby rendering the crack cocaine, as well as defendant's statement to police, admissible. When determining whether an action taken by a defendant following an impermissible seizure dissipated the taint of the illegality, "[t]he test to be applied is whether defendant's action . . . was spontaneous and precipitated by the illegality or whether it was a calculated act not provoked by the unlawful police activity and thus at-

tenuated from it" (*People v Wilkerson*, 64 NY2d 749, 750 [1984]; *see People v Boodle*, 47 NY2d 398, 402 [1979], *cert denied* 444 US 969 [1979]; *People v Dennis*, 31 AD3d 810, 811-812 [2006]). Here, according to Hyde's own testimony, defendant's act of pushing him occurred contemporaneously with Hyde's attempt to perform a search of defendant's person. Defendant's action in pushing Hyde was a spontaneous reaction to Hyde's attempt to touch him, and a direct consequence of the illegal seizure (*see People v Felton*, 78 NY2d 1063, 1065 [1991]; *People v Wilkerson*, 64 NY2d at 750-751).

In light of the foregoing, we find that the drugs discarded by defendant during his flight were properly suppressed (*see People v Sierra*, 83 NY2d 928, 930 [1994]; *People v McCullough*, 31 AD3d 812, 813-814 [2006], *lv denied* 7 NY3d 850 [2006]). Absent probable cause for defendant's arrest, his statement was also properly suppressed (*see People v Baptiste*, 306 AD2d 562, 566 [2003], *lv denied* 1 NY3d 594 [2004]).

Mercure, Spain, Malone Jr. and Kavanagh, JJ., concur. Ordered that the order is affirmed.