People v Butler (2021 NY Slip Op 03222)





People v Butler


2021 NY Slip Op 03222


Decided on May 20, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:May 20, 2021

110948

[*1]The People of the State of New York, Respondent,
v
Devon T. Butler, Appellant.

Calendar Date:March 16, 2021

Before: Egan Jr., J.P., Lynch, Aarons, Pritzker and Colangelo, JJ.


Clea Weiss, Ithaca, for appellant.
Michael A. Korchak, District Attorney, Binghamton (Rita M. Basile of counsel), for respondent.


Lynch, J.
Appeal from a judgment of the County Court of Broome County (Cawley Jr., J.), rendered September 5, 2018, convicting defendant upon his plea of guilty of the crimes of criminal possession of a controlled substance in the third degree and tampering with physical evidence.
In March 2017, two police officers assigned to the Broome County Special Investigations Unit conducted a traffic stop of defendant's vehicle in the City of Binghamton, Broome County, followed by a canine search of the vehicle. When the canine alerted for drugs on defendant's person, he fled and was soon apprehended nearby. During the pursuit, the officers observed defendant reach into the back of his pants, leading officers to believe "that he might have thrown something." Following defendant's arrest, police discovered a discarded package found to contain 76 packets of heroin. Defendant admitted that the drugs belonged to him and that he lost an item of jewelry during the chase, which was also recovered by the police. An indictment followed, charging defendant with criminal possession of a controlled substance in the third degree, tampering with physical evidence and obstructing governmental administration in the second degree. After County Court denied defendant's motion to suppress the evidence of the drugs seized and statements made as the product of an illegal search, defendant pleaded guilty to both the possession and tampering charges. In accord with the plea agreement, defendant was sentenced to a prison term of four years, with two years of postrelease supervision, on the possession conviction, and to a lesser concurrent term on the tampering conviction. Defendant appeals.
Defendant challenges County Court's suppression ruling, a claim that survives his guilty plea in the absence of a valid appeal waiver (see People v Cogdell, 126 AD3d 1136, 1138 [2015], lv denied 25 NY3d 1200 [2015]). To begin, defendant acknowledges that the police officers had probable cause to effect the traffic stop (see People v Blandford, 190 AD3d 1033, 1035 [2021], lv granted ___ NY3d ___ [Mar. 5, 2021]). Defendant asserts, however, that the ensuing canine sniff search of his vehicle and person was impermissible, contending that the police lacked a "founded suspicion" to search the vehicle and probable cause to search his person. In People v Devone (15 NY3d 106 [2010]), the Court of Appeals determined that a canine sniff of the exterior of a vehicle constitutes a search under NY Constitution, article 1, § 12 and that a "'founded suspicion' that criminality was afoot provided sufficient grounds for the search" (id. at 113; compare Illinois v Caballes, 543 US 405, 409 [2005] [canine sniff of vehicle exterior after a traffic stop not a search under the Fourth Amendment]).
Both of the involved officers, Todd Haven and Christopher Bracco, testified at the suppression hearing. Haven explained that, while the two officers were conducting surveillance prior to the traffic stop, he observed [*2]defendant's vehicle as it pulled into a parking lot and that a male directly entered the vehicle. Although it was dark out, Haven observed what he "believed to be a hand to hand exchange." Seconds later, the male exited the vehicle and defendant pulled away, followed by Bracco and Haven in separate vehicles. The officers eventually stopped defendant's vehicle after observing him make an evasive U-turn, speed up and drive through a stop sign. When defendant advised that he did not have a driver's license and gave what Bracco considered an inconsistent explanation as to where he was going and coming from, Bracco asked defendant to step out of the vehicle. Defendant complied, leaving the door open. Bracco described defendant as nervous. Upon observing a bulge in defendant's pocket, Bracco inquired as to how much cash he had and defendant responded $1,000. Bracco then asked defendant for his consent to search the vehicle, but defendant declined. At this point, Bracco retrieved the canine from his vehicle to initiate the search. We agree with County Court that these circumstances provided a founded suspicion to justify an exterior canine search of the vehicle (see People v Devone, 15 NY3d at 113-114; People v Blandford, 190 AD3d at 1036-1037).
The dynamic changed, however, once Bracco initiated the search. Bracco explained that the canine was "a passive alert narcotics detection dog." Bracco used the phrase "in odor" to indicate when the canine catches the scent of narcotics and noted that the canine "alerts" by sitting once the narcotics are located. As Bracco was returning with the canine, defendant was standing with Haven about six to eight feet from the vehicle. The canine was in front of Bracco and started to pull towards defendant, indicating to Bracco that the canine was "in odor." Bracco redirected the canine and, as they proceeded around the vehicle, the canine jumped into the driver's seat area and began sniffing the seat — indicating to Bracco that the canine was once again "in odor." Bracco then decided to "see if there's any odor on [defendant]." He extended the leash and allowed the canine to walk around Haven and defendant. Once behind defendant, the canine "started to become in odor." The canine then "put his nose in the groin/buttock region of [defendant], and then he sat." Bracco stated that the canine "has got something" and defendant bolted.
These circumstances do not present a situation, as inaccurately characterized by County Court, of a canine simply sniffing the air around defendant. Defendant correctly asserts that the canine's contact sniff of his person intruded upon his personal privacy as secured under both the Fourth Amendment of the US Constitution and article 1, § 12 of the NY Constitution (see Florida v Jardines, 569 US 1, 5 [2013]; Katz v United States, 389 US 347, 351 [1967]). The question presented is whether the search ran afoul of either constitutional provision and what standard applies to [*3]make that assessment — an issue of first impression for this Court.
Considering the context of a vehicle traffic stop and how events unfolded, we conclude that a reasonable suspicion standard should apply, not one of probable cause (see Terry v Ohio, 392 US 1, 8 [1968]; United States v Reyes, 349 F3d 219, 223-224 [5th Cir 2003], cert denied 540 US 1228 [2004]; People v Dunn, 77 NY2d 19, 26 [1990], cert denied 501 US 1219 [1991]; Tedford v State, 307 So 3d 738, 745-746 [Fla 4th DCA 2020]). A canine sniff is a minimal intrusion compared to a full-blown search of a person, intended only to detect the possession of narcotics (see People v Dunn, 77 NY2d at 26). Without prompting from Bracco, the canine twice was "in odor" of its own accord, providing a reasonable and articulable basis for Bracco to suspect that defendant possessed narcotics on his person. Given the necessity for prompt action, it was not unreasonable for Bracco to allow the canine to approach defendant. There was contact between the canine and defendant's person, but the record suggests that contact was brief and the canine quickly alerted. In these circumstances, we conclude that the search was valid and the suppression motion properly denied.
Defendant's remaining contentions are to no avail. Having discarded the heroin while properly being pursued by the officers, defendant abandoned any right to challenge the seizure of this evidence (see People v Ramirez-Portoreal, 88 NY2d 99, 110 [1996]; People v Boodle, 47 NY2d 398, 402-404 [1979], cert denied 444 US 969 [1979]). The record also establishes that defendant's statements were voluntarily made at the police station after he was duly apprised of his Miranda rights. As such, the judgment is affirmed.
Egan Jr., J.P., and Colangelo, J., concur.
Aarons, J. (concurring).
I agree with the majority that County Court correctly denied defendant's suppression motion. I write separately though because the majority's analysis of whether the canine search of defendant's person contravened constitutional standards and what standard applies to make that assessment goes beyond our jurisdiction and cannot be a basis to affirm the judgment.
In denying defendant's suppression motion, County Court found that founded suspicion existed to conduct a canine search of the vehicle. The majority, as do I, concludes that this finding was proper. Defendant, however, also argues that the canine search of him was an illegal search. The court concluded that defendant had no reasonable expectation of privacy in the air surrounding him and, therefore, "[i]t was . . . perfectly acceptable for [the canine] to approach defendant in an effort to 'sniff' the air surrounding defendant." I agree with the majority that the court inaccurately characterized the situation as a canine sniffing the air and that the proper questions were whether the canine sniff of defendant's person constituted an unconstitutional search and what the applicable standard should [*4]be to make that determination. Having identified County Court's error and pointing out the correct questions to be answered, I believe the majority exceeded its jurisdiction by taking the extra step and answering those questions.
Our power of review extends only to "any question of law or issue of fact involving error or defect in the criminal court proceedings which may have adversely affected [the defendant]" (CPL 470.15 [1]). CPL 470.15 (1) has been construed "as a legislative restriction on [our] power to review issues either decided in [a defendant's] favor, or not ruled upon, by the trial court" (People v LaFontaine, 92 NY2d 470, 474 [1998]; see People v Harris, 35 NY3d 1010, 1011 [2020]; People v Kabia, 190 AD3d 1105, 1107 [2021]). County Court did not rule on the issues of whether the canine search of defendant's person constituted an unreasonable search or what standard is applicable to make that determination. Yet, by opining on those issues, the majority runs afoul of CPL 470.15 (1) by affirming the judgment on a ground that was never a predicate for the court's decision (see People v Harris, 35 NY3d at 1011-1012; People v Ingram, 18 NY3d 948, 949 [2012]; People v Muhammad, 17 NY3d 532, 547 [2011]; People v Sykes, 110 AD3d 1437, 1438 [2011]). Accordingly, I do not join that part of the majority's decision concluding that reasonable suspicion is the proper standard to apply when analyzing whether the canine search of defendant was illegal and that such search was proper under that standard.
Notwithstanding the foregoing, it is unnecessary to withhold decision (compare People v Kabia, 190 AD3d at 1107). In this regard, even if the canine search of defendant was illegal, I agree with the majority that defendant forfeited any expectation of privacy by abandoning the recovered heroin while being pursued by the police officers (see People v Boodle, 47 NY2d 398, 404 [1979], cert denied 444 US 969 [1979]; People v Davis, 83 AD3d 1210, 1212 [2011], lv denied 17 NY3d 794 [2011]) — a ground that County Court did rely upon in denying the suppression motion. I also agree with the majority that the court correctly found that defendant's statements made at the police station were done so voluntarily (see generally People v Bradford, 15 NY3d 329, 333-334 [2010]). For these reasons, I respectfully concur.
Pritzker, J. (dissenting).
Although I agree with the majority that the canine's contact sniff search of defendant's person intruded upon his personal privacy, I disagree that a reasonable suspicion standard justifies this intrusion.[FN1] To the contrary, it is my opinion that the more stringent probable cause standard should apply and that, because that standard was not met here, the canine sniff of defendant's person constituted an illegal search. The physical evidence obtained thereafter was tainted by the improper police conduct and should have been suppressed. Thus, I respectfully dissent.
"Depending upon the extent of intrusion upon [*5]a person's privacy, corresponding levels of cause and justification are required. . . . The greater the intrusion into the privacy or the restriction of the freedom of the person the greater the justification required" (People v Perel, 34 NY2d 462, 465 [1974] [citations omitted]; see Terry v Ohio, 392 US 1, 16-18 [1968]). In People v De Bour (40 NY2d 210 [1976]), the Court of Appeals "set forth a graduated four-level test for evaluating street encounters initiated by the police: level one permits a police officer to request information from an individual and merely requires that the request be supported by an objective, credible reason, not necessarily indicative of criminality; level two, the common-law right of inquiry, permits a somewhat greater intrusion and requires a founded suspicion that criminal activity is afoot; level three authorizes an officer to forcibly stop and detain an individual, and requires a reasonable suspicion that the particular individual was involved in a felony or misdemeanor; level four, arrest, requires probable cause to believe that the person to be arrested has committed a crime" (People v Moore, 6 NY3d 496, 498-499 [2006], citing People v De Bour, 40 NY2d at 223).
Although the requisite level of cause and justification necessary for a canine sniff search of an individual is an issue of first impression in New York, courts have articulated two levels of cause necessary for certain locations. To that end, the Court of Appeals has held that the use of a canine sniff in the common hallway of an apartment building to detect the presence of controlled substances constitutes a search that must be justified by reasonable suspicion (see People v Dunn, 77 NY2d 19, 26 [1990], cert denied 501 US 1219 [1991]; People v Devone, 57 AD3d 1240, 1242 [2008], affd 15 NY3d 106 [2010]). The Court, in so holding, stated that, "[g]iven the uniquely discriminate and nonintrusive nature of such an investigative device, as well as its significant utility to law enforcement authorities, we conclude that it may be used without a warrant or probable cause, provided that the police have a reasonable suspicion that a residence contains illicit contraband" (People v Dunn, 77 NY2d at 26). By contrast, the Court of Appeals has held that a canine sniff search of the exterior of a lawfully stopped vehicle must be supported only by a founded suspicion that criminality is afoot (see People v Devone, 15 NY3d 106, 113 [2010]; People v Blandford, 190 AD3d 1033, 1036-1037 [2021], lv granted ___ NY3d ___ [Mar. 5, 2021]). In applying this less stringent standard, the Court recognized that "there is a diminished expectation of privacy attributed to individuals and their property when traveling in an automobile" (People v Devone, 15 NY3d at 113 [internal quotation marks and citation omitted]).
In light of these holdings, the majority's opinion would allow the search of an individual's person upon the same degree of cause that would permit a search of a [*6]common hallway of an apartment building (see People v Dunn, 77 NY2d at 26). This cannot be because, certainly, there is a greater expectation of privacy in one's body than in a common hallway. Moreover, while canine sniff searches have been subject to lower levels of justification due to their minimally intrusive nature (see People v Devone, 15 NY3d at 113; People v Dunn, 77 NY2d at 23), a canine sniff of an individual's groin area is not minimally intrusive.
To be sure, it could be argued that a protective pat frisk, which requires only reasonable suspicion, is in some aspects similar to the canine sniff that occurred here. However, this less stringent standard is only applicable if an officer "has knowledge of some fact or circumstance that supports a reasonable suspicion that the suspect is armed or poses a threat to safety" (People v Wideman, 192 AD3d 1384, 1385 [2021] [internal quotation marks, brackets and citations omitted]; see CPL 140.50 [3]), and neither of the officers testified to any such fact or circumstance that would amount to a threat to their safety (compare People v Carey, 163 AD3d 1289, 1291 [2018], lv denied 32 NY3d 1124 [2018]; People v Morris, 138 AD3d 1239, 1241 [2016], lv denied 27 NY3d 1153 [2016]). In fact, one of the officers testified that he had the canine sniff defendant to look for drugs. On this record, the information possessed by the police officers amounts to, at best, reasonable suspicion and "did not rise to the level of probable cause and was insufficient to justify the intrusion" of a search of defendant's person (People v Washington, 58 AD2d 971, 971-972 [1977]; see People v Brown, 32 NY2d 172, 174 [1973]).
Finally, it was only after this improper search that defendant fled and discarded the drugs; thus, he was not "acting spontaneously or making a conscious and independent decision to abandon the property" (People v Pirillo, 78 AD3d 1424, 1426 [2010]; compare People v Boodle, 47 NY2d 398, 404 [1979], cert denied 444 US 969 [1979]; People v Riddick, 224 AD2d 782, 783-784 [1996]). Accordingly, the physical evidence obtained thereafter was tainted by the improper police conduct and should have been suppressed (see People v Pirillo, 78 AD3d at 1426; People v Sampson, 68 AD3d 1455, 1457-1458 [2009]). As suppression of the evidence would require dismissal of the indictment, we need not reach defendant's argument that County Court erred by failing to suppress defendant's statements.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: I also agree that the canine sniff search of defendant's vehicle was proper as it was supported by a founded suspicion.