People v Cook (2022 NY Slip Op 03934)

People v Cook

2022 NY Slip Op 03934

Decided on June 16, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 16, 2022

110580
[*1]The People of the State of New York, Respondent,
v
Bradley Cook, Appellant.

Calendar Date:April 20, 2022

Before:Aarons, J.P., Pritzker, Reynolds Fitzgerald, Ceresia and Fisher, JJ.

Martin J. McGuinness, Saratoga Springs, for appellant.
David J. Clegg, District Attorney, Kingston (Joan Gudesblatt Lamb of counsel), for respondent.

Fisher, J.
Appeal from a judgment of the County Court of Ulster County (Williams, J.), rendered May 25, 2018, upon a verdict convicting defendant of the crime of robbery in the third degree.
In September 2017, defendant was charged by indictment with robbery in the third degree in connection with a robbery at a Key Bank in the City of Kingston, Ulster County. The charge arose out of allegations that, in June 2017, defendant handed a bank teller a note that was mostly illegible, except for a portion listing dollar signs and numbers. Believing that the bank was being robbed, the teller handed defendant a sum of money and he then left the bank. Within an hour, defendant was identified by a member of law enforcement who personally knew him, and police "pinged" defendant's cell phone five separate times until he was located. Defendant agreed to go with detectives to the police station where, after being read his Miranda rights, he ultimately admitted to the bank robbery. Thereafter, defendant unsuccessfully moved to suppress evidence of the warrantless "pinging" and the statements he made at the police station, and the matter proceeded to a jury trial where defendant was found guilty as charged and subsequently sentenced to a term of incarceration. Defendant appeals.
Defendant contends that the verdict is against the weight of the evidence. We disagree. When conducting "a weight of the evidence review, this Court must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and, if not, then weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Marlett, 191 AD3d 1183, 1184-1185 [2021] [internal quotation marks and citations omitted], lv denied 37 NY3d 966 [2021]; see People v Adams, 201 AD3d 1031, 1032 [2022], lvs denied 38 NY3d 948, 953 [2022]). In doing so, "we consider the evidence in a neutral light and defer to the jury's credibility assessments" (People v Hansel, 200 AD3d 1327, 1328 [2021] [internal quotation marks and citations omitted], lv denied 38 NY3d 927 [2022]).
As charged here, "[a] person is guilty of robbery in the third degree when he [or she] forcibly steals property" (Penal Law § 160.05). "A person forcibly steals property and commits robbery when, in the course of committing a larceny, he [or she] uses or threatens the immediate use of physical force upon another person for the purpose of . . . [p]reventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or . . . [c]ompelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny" (Penal Law § 160.00 [1], [2]). A person must intend that the threatened use of force "was either to compel his [or [*2]her] victim to deliver up property or to prevent or overcome resistance to the taking" (People v Smith, 79 NY2d 309, 315 [1992]), "which may be implicit from the defendant's conduct or gleaned from a view of the totality of the circumstances" (People v Gueye, 200 AD3d 1227, 1227 [2021] [internal quotation marks and citations omitted], lv denied 38 NY3d 950 [2022]). Since "[t]he element of intent is rarely proved by an explicit expression of culpability by the perpetrator[,] . . . competing inferences . . . drawn regarding [a person's] intent, if not unreasonable, are the exclusive domain of the finders of fact, not to be disturbed by [this Court]" (People v Jones, 202 AD3d 1285, 1287 [2022] [internal quotation marks and citations omitted]; see People v Lamont, 25 NY3d 315, 318-319 [2015]; People v Newell, 148 AD3d 1216, 1221 [2017], lv denied 29 NY3d 1035 [2017]).
At trial, the bank teller testified that a man walked into the bank wearing a ball cap with a sweatshirt hoody over it, thick sunglasses, a camouflage scarf around his mouth area and rubber gloves on his hands with gauze bandages under the gloves and on top of his hands. The man came up to her bank counter and handed her what was mostly an illegible note but had a "money symbol" and numbers on it — causing her to believe that she was being robbed. She testified that she was scared and handed the man money because she was "in fear of not only [herself], [but she] also had three other people in the bank at the time" and she "didn't want anyone to get hurt including [herself]." The man took the money and left the bank.
The People offered the testimony of several Kingston Police Department detectives and officers. Detective Lieutenant Thierry Crozier testified that he arrived at the bank within seven or eight minutes after the incident and accessed the video surveillance footage from the bank. He took a still photograph of the suspect from the bank's surveillance video with his cell phone, and then emailed that photograph to the entire Kingston Police Department for the purpose of trying to identify the suspect. Crozier testified that he received phone calls from two sergeants and one officer positively identifying the suspect as defendant. Patrol Sergeant Richard Negron testified that he called Crozier almost immediately after receiving the email because he has known defendant personally and professionally for six or seven years. Specifically, Negron explained that he played in the same softball league with defendant, where he would see defendant approximately once a week in the summertime. This information was relayed to Detective Eric Van Allen, who subsequently made contact with defendant at a softball park and brought defendant to the police station for an interview. After being read his Miranda rights, defendant admitted that he handed the bank teller a note which requested money and read "no tracers, dye bags, no police, nobody gets hurt." At trial, the People entered [*3]into evidence the surveillance footage and the videorecorded interview.
We find that the People presented evidence that established that defendant threatened the use of force to compel the bank teller to deliver up the property and to overcome resistance of the taking of the property, which is implicit from defendant's conduct and when considering the totality of the circumstances (see People v McDowell, 200 AD3d 502, 503 [2021], lv denied 38 NY3d 952 [2022]; People v Crawford, 176 AD3d 415, 416 [2019], lv denied 34 NY3d 1016 [2019]; see also People v Smith, 79 NY2d at 312; People v Woods, 41 NY2d 279, 282-283 [1977]). Although a different verdict would not have been unreasonable had the jury discredited the testimony of the bank teller, when viewing the evidence — including the surveillance video and defendant's admission as to the context of the note — in a neutral light, we find that defendant's conviction for robbery in the third degree is supported by the weight of the evidence (see People v Jones, 202 AD3d at 1289; People v Walker, 191 AD3d 1154, 1158 [2021], lv denied 37 NY3d 961 [2021]).
Next, defendant argues that the warrantless "pinging" of his cell phone was an illegal search and that any statements made to police, after they located him using the cell phone "pinging," should have been suppressed by County Court. Even if defendant was correct that the wireless pinging of his cell phone constituted an illegal search, defendant's statements were sufficiently attenuated and do not require suppression (see People v Durfey, 170 AD3d 1331, 1336 [2019], lv denied 34 NY3d 980 [2019]; People v Hill, 153 AD3d 413, 418 [2017], affd 33 NY3d 1076 [2019]; see also People v Kabia, 197 AD3d 788, 789-790 [2021], lv denied 37 NY3d 1162 [2022]). Here, information gleaned from the cell phone pings was not exploited during the interview to obtain the statements. Rather, defendant's statements were sufficiently attenuated from the cell phone "pinging" as they were obtained independently through other available evidence already known to police, including from the bank teller and surveillance footage (see People v Durfey, 170 AD3d at 1336; People v Cavanagh, 97 AD3d 980, 982 [2012], lv denied 19 NY3d 1101 [2012]; People v Roe, 136 AD2d 140, 143-144 [1988], affd 73 NY2d 1004 [1989]). Further, defendant's statements were given hours after he was identified by members of the police department — who previously knew him — and after defendant consented to going to the police station and waived his Miranda rights (see People v Palmer, 161 AD3d 1291, 1293-1294 [2018], lvs denied 31 NY3d 1148, 1151, 1154 [2018]; People v Eaddy, 200 AD2d 896, 898 [1994], lv denied 83 NY2d 852 [1994]; see also People v Richardson, 9 AD3d 783, 788-789 [2004], lv denied 3 NY3d 680 [2004]). Therefore, it cannot be said that such statements were tainted by the cellphone pinging (see People v Rogers, 52 NY2d 527, 535 [1981], cert denied 454 US 898 [1981]; People v Palmer, 161 AD3d [*4]at 1294).
We also reject defendant's argument that County Court's Sandoval ruling was erroneous, as the record reflects that the court engaged in a careful analysis and properly concluded that the convictions and prior bad acts either went to defendant's credibility or reflected a willingness to put his own interests above those of society (see People v Harris, 186 AD3d 907, 912 [2020], lv denied 36 NY3d 1120 [2021]; People v Alnutt, 101 AD3d 1461, 1463-1464 [2012], lv denied 21 NY3d 941 [2013], cert denied 571 US 1180 [2014]). To the extent that defendant challenges County Court's failure to enter a ruling as to whether the People could cross-examine him about an uncharged crime relating to the sale of a controlled substance, this argument is unpreserved and without merit. Before jury selection, County Court and the parties agreed to "hear what unfolds during the trial" before the court could rule on this issue. However, defendant indicated that he did not "anticipate" putting on a case, and indeed rested at the close of the People's proof without requesting a ruling or otherwise raising this issue.
Defendant's claim that County Court improperly provided written instructions to the jury and that the supplemental instructions themselves were improper is unpreserved and we decline defendant's invitation to take corrective action in the interest of justice inasmuch as all parties gave consent to same (see People v McFadden, 162 AD3d 501, 501 [2018], lv denied 32 NY3d 939 [2018]; People v Wady, 220 AD2d 631, 631 [1995], lv denied 87 NY2d 909 [1995], lv dismissed 87 NY2d 901 [1995]). To the extent that defendant claims that this consent was afflicted by ineffective assistance of counsel, defendant failed "to demonstrate that he . . . was not provided meaningful representation and that there [was] an absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct" (People v Porter, 184 AD3d 1014, 1018-1019 [2020] [internal quotation marks and citations omitted], lv denied 35 NY3d 1069 [2020]). Although "[a] single error can constitute ineffective assistance if a defendant demonstrates that the error was so egregious and prejudicial as to deprive [the] defendant of a fair trial" (People v Wells, 101 AD3d 1250, 1252 [2012] [internal quotation marks and citations omitted], lv denied 20 NY3d 1066 [2013]), "a simple disagreement with strategies, tactics or the scope of possible cross-examination, weighed long after the trial, does not suffice" (People v Flores, 84 NY2d 184, 187 [1994]; see People v Porter, 184 AD3d at 1019). In our view, considering the numerous jury notes indicting the jurors' confusion over several definitions which they requested to be read and subsequently reread, and County Court's discussion with counsel addressing the law as it relates to providing a jury written instructions before the parties consented to same (see CPL 310.30), we are satisfied that this was a strategic decision that did not [*5]render counsel ineffective or deprive defendant of a fair trial (see People v Porter, 184 AD3d at 1019; People v Wells, 101 AD3d at 1255).
Aarons, J.P., Pritzker, Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the judgment is affirmed.