People v Thomas (2024 NY Slip Op 03319)

People v Thomas

2024 NY Slip Op 03319 [42 NY3d 236]

June 18, 2024

Cannataro, J.

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, October 16, 2024

[*1]

The People of the State of New York, Respondent,
v
Kevin L. Thomas, Appellant.

Argued April 17, 2024; decided June 18, 2024

People v Thomas, 211 AD3d 1326, reversed.

{**42 NY3d at 238} OPINION OF THE COURT

Cannataro, J.

The question presented by this appeal is whether the courts below erred in denying defendant's motion to suppress a large quantity of heroin recovered from the backseat of his car during a warrantless search by defendant's parole officer, who had been contacted by police in the course of a traffic stop. Because the lower courts applied an incorrect legal standard in analyzing whether the traffic stop was unreasonably prolonged, we reverse and remit to County Court for further proceedings.
The testimony presented at the suppression hearing established that defendant, who was on lifetime parole for prior narcotics offenses, was observed driving outside his county of residence by an off-duty police officer who recognized defendant's distinctive vehicle and license plate. The off-duty officer, who was familiar with defendant, suspected that defendant was in violation of a condition of his parole requiring him to stay within a certain geographic area and so contacted an on-duty officer in the vicinity of defendant's residence.
The on-duty officer knew defendant to be on parole, and suspected that he was in violation of his parole conditions because he was outside of the county and out after the standard parole curfew time. Based on these facts and defendant's history, he believed defendant was "possibly transporting drugs." The officer and his partner waited for defendant to return to the jurisdiction at a location where they could observe him exiting the highway. When defendant exited the highway, the officers followed defendant's vehicle, observed him commit a traffic infraction by failing to come to a complete stop at a stop sign and initiated a traffic stop at about 9:20 p.m. Defendant had pulled [*2]into his driveway by the time he stopped his vehicle and the ensuing encounter was captured on one officer's body camera. Defendant readily admitted committing the traffic infraction, claiming he was distracted because he was talking on the phone, and provided his driver's license, which the officer confirmed was valid. The officer then questioned defendant about where he was coming from and whether he was in violation of his curfew. Defendant provided a series of inconsistent responses that the officer knew to be false. Defendant also{**42 NY3d at 239} appeared nervous and, when asked, withheld consent to search his vehicle. The officers repeatedly stated that if he did not give consent, they would call his parole officer to search the car. The police attempted to have a canine unit come to the scene to conduct a sniff of the exterior of the vehicle, but none was available.
Then, at about 9:40 p.m., the police contacted defendant's parole officer to advise him of what had transpired up to that point. The parole officer indicated that he would report to the scene to investigate. Defendant was frisked, his personal belongings were removed and he was placed, without handcuffs, in the back of the patrol car for officer safety purposes to await his parole officer's arrival. Upon arrival, defendant refused to answer his parole officer's questions, despite a parole condition requiring him to do so. The parole officer searched defendant's vehicle and discovered 2,000 glassines of heroin inside a shoebox.
In support of his motion to suppress, defendant argued that the People failed to prove that the officers had the requisite level of suspicion to extend the traffic stop after its initial basis—the traffic infraction—was exhausted, asserting that a traffic stop cannot be extended for the purpose of investigating an unrelated crime for which the officer lacked reasonable suspicion.[FN1] He also argued that the parole officer's warrantless search of his vehicle was not justified, as the parole officer was acting as an agent of the police.
County Court denied the motion, finding that the initial stop was justified by the police officer's observation of the traffic infraction. The court further found that, under the totality of the circumstances, including defendant's parole status and the false responses he gave to the police officers' questions, the police had a founded suspicion of criminality justifying the continued detention of defendant in order to contact his parole officer. The court went on to find that, based on the credible evidence of defendant's parole violations, the ensuing search of the vehicle by the parole officer was rationally and reasonably related to that officer's parole duties.
Defendant was convicted, upon his guilty plea, of criminal possession of a controlled substance in the third degree. The{**42 NY3d at 240} Appellate Division affirmed, concluding that suppression was properly denied as the traffic stop, which was justified at its inception, was not unlawfully prolonged (211 AD3d 1326 [3d Dept 2022]). The Court opined that defendant's inconsistent and false responses, considered with the apparent violations of the conditions of his parole and his nervous demeanor, provided a founded suspicion of criminality, allowing the officers to extend the stop to request consent to search or await a canine sniff. The Court further concluded that, once the police officers learned that the canine unit was unavailable, it was reasonable for them to contact defendant's parole officer and detain defendant pending the parole officer's arrival. Finally, the Court determined that the subsequent warrantless search of the vehicle was substantially related to the performance of the parole officer's duty in the circumstances.
Two Justices dissented and would have granted suppression, concluding that defendant was detained beyond what was reasonable under the circumstances because the police officers lacked a founded suspicion that criminality was afoot after the justification for the traffic stop had been exhausted. An Appellate Division Justice granted defendant leave to appeal (39 NY3d 1081 [2023]).
The proper standard for detaining an individual beyond "the time reasonably required" to complete a traffic stop is reasonable suspicion (Rodriguez v United States, 575 US 348, 354-355 [2015] [internal quotation marks omitted]; see People v Banks, 85 NY2d 558, 562 [1995]). Given that a traffic stop is a "limited seizure" of the occupants of a vehicle, "[f]or a traffic stop to pass constitutional muster, the officer's action in stopping the vehicle must be justified at its inception and the seizure must be reasonably related in scope, including its length, to the circumstances which justified the detention in the first instance" (Banks, 85 NY2d at 562). A "continued involuntary detention of [a] defendant . . . constitute[s] a seizure in violation of their constitutional rights, unless circumstances coming to [the officer's] attention following the initial stop furnish[ ] . . . reasonable suspicion that they were engaged in criminal activity" (id. [emphasis added]). Likewise, the United States Supreme Court has held that "[a] seizure justified only by a police-observed traffic violation . . . become[s] unlawful if it is prolonged beyond the time [*3]reasonably required to complete th[e] mission of issuing a ticket for the violation" (Rodriguez, 575 US at 350-351 [internal quotation marks and citation omitted]). In this{**42 NY3d at 241} vein, although that "mission" encompasses " 'ordinary inquiries incident to [the traffic] stop,' " it does not include additional measures designed to detect evidence of criminality (575 US at 355, quoting Illinois v Caballes, 543 US 405, 408 [2005]). Thus, an otherwise lawful traffic stop may not be prolonged "absent the reasonable suspicion ordinarily demanded to justify detaining an individual" (575 US at 355).
Here, there is record support for the affirmed finding that the traffic stop was justified at its inception, based upon the police officer's observation that defendant committed a traffic infraction (see People v Hinshaw, 35 NY3d 427, 430 [2020]). However, the courts below evaluated whether the traffic stop was prolonged beyond the time reasonably required for its completion under the founded suspicion standard applicable to the common-law right to inquire (see People v De Bour, 40 NY2d 210, 223 [1976]), a lesser standard than the reasonable suspicion necessary to prolong a traffic stop. As a result, remittal is necessary to allow for consideration of this issue under the proper standard.[FN2]
We note that although "a parolee does 'not surrender [their] constitutional rights against unreasonable searches and seizures' merely by virtue of being on parole," " 'in any evaluation of the reasonableness of a particular search or seizure,' whether undertaken by parole or police officers, 'the fact of defendant's status as a parolee is always relevant and may be critical' " (People v McMillan, 29 NY3d 145, 148-149 [2017], quoting People v Huntley, 43 NY2d 175, 181 [1977]). The issue is whether, under the totality of the circumstances, including{**42 NY3d at 242} defendant's lifetime parole status and the officers' awareness that he was likely in violation of multiple conditions of his parole, "reasonable suspicion of criminal activity justified detaining [defendant] beyond completion of the traffic infraction investigation" (Rodriguez, 575 US at 358). As stated, "[a] seizure justified only by a police-observed traffic violation . . . become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission of issuing a ticket for the violation" (id. at 350-351 [internal quotation marks and citation omitted]).
Accordingly, the order of the Appellate Division should be reversed and the matter remitted to County Court for further proceedings in accordance with this opinion.

Rivera, J. (dissenting).
The record on appeal establishes that the officers had a lawful basis to stop defendant Kevin Thomas for a traffic violation, and reasonable suspicion that he had engaged in criminal activity, thereby justifying his prolonged detention until his parole officer arrived and searched defendant's vehicle. Therefore, I would affirm the Appellate Division rather than remit for further proceedings.
I.
I agree with the majority's summary of the facts and procedural history (see majority op at 
238-240). I also agree with the majority's articulation of the standard applicable to defendant's motion to suppress (see id. at 
240-241). A traffic stop is "[l]ike a Terry stop" (Rodriguez v United States, 575 US 348, 354 [2015]), where "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop" and "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time" (Florida v Royer, 460 US 491, 500 [1983]). Thus, "[f]or a traffic stop to pass constitutional muster, the officer's action in stopping the vehicle must be justified at its inception and the seizure must be reasonably related in scope, including its length, to the circumstances which justified the detention in the first instance," and a "continued involuntary detention of [a] defendant . . . constitute[s] a seizure in violation of their constitutional rights, unless circumstances coming to [the officer's] attention following the initial stop furnished . . . reasonable suspicion that they were engaged in criminal activity" (People v Banks, 85 NY2d 558, 562 [1995]; see also{**42 NY3d at 243} Rodriguez, 575 US at 355). Although, as the majority states, the Appellate Division "applied an incorrect legal standard" in affirming the denial of defendant's motion to suppress (majority op at 
238), I conclude that under the unique circumstances presented here, remittal is unwarranted because the facts are undisputed, the legal issue is resolved by application of established precedent and defendant's claim is meritless. Nothing bars final resolution in this Court and thus the prudent course is to preserve judicial resources and affirm the Appellate Division.
[*4]II.
As a threshold matter, this appeal falls outside the LaFontaine/Concepcion rule that the intermediate appellate court—and, in turn, we—may not review issues " 'either decided in an appellant's favor, or not ruled upon, by the trial court' " (People v Concepcion, 17 NY3d 192, 195 [2011], quoting People v LaFontaine, 92 NY2d 470, 474 [1998]). Members of this Court have roundly criticized the rule (see Concepcion, 17 NY3d at 201 [Smith, J., joined by Pigott, J., dissenting] ["LaFontaine . . . was a mistake, and a serious one . . . I had hoped that this would provide the occasion for giving that case a decent burial, but the majority ill-advisedly resurrects it"]; People v Ingram, 18 NY3d 948, 949 [2012, Pigott, J., joined by Smith, J., dissenting] ["For the reasons that Judge Smith stated in his dissent in . . . Concepcion . . . , I remain convinced that . . . LaFontaine . . . should be overruled"]). And while the rule survives, we have, over recent years, narrowly construed it to mitigate nonsensical results (see People v Nicholson, 26 NY3d 813, 817 [2016] ["(T)he Appellate Division does not exceed its statutory authority or run afoul of our decisions in . . . LaFontaine . . . and . . . Concepcion . . . when it relies on the record to discern the unarticulated predicate for the trial court's evidentiary ruling"]; People v Garrett, 23 NY3d 878, 885 n 2 [2014] [distinguishing between "separate alternative grounds for decision" which the LaFontaine rule covers and components of a "single multipronged legal ruling" which it does not]; id. at 899 [Smith, J., concurring] [endorsing the Garrett "majority's limitation of the rule"]).
The Appellate Division majority, like County Court, rejected defendant's claims that the drugs found in his vehicle should have been suppressed, concluding that the officers had a founded suspicion of criminality based on defendant's conduct{**42 NY3d at 244} before the traffic stop, his statements in response to police questioning, and his status as a parolee. The Appellate Division dissent correctly references this Court's decision in Banks for the proposition that " ' "the officer's action in stopping the vehicle must be justified at its inception and the seizure must be reasonably related in scope, including its length, to the circumstances which justified the detention in the first instance" ' " (211 AD3d at 1332, quoting People v Blanche, 183 AD3d 1196, 1198 [3d Dept 2020], quoting Banks, 85 NY2d at 562). Further, both the suppression court and the Appellate Division majority also correctly referenced People v McMillan, and People v Huntley, for the notion that " 'in any evaluation of the reasonableness of a particular search or seizure,' . . . 'the fact of defendant's status as a parolee is always relevant and may be critical' " (McMillan, 29 NY3d 145, 148-149 [2017], quoting Huntley, 43 NY2d 175, 181 [1977]). However, the suppression court and both the Appellate Division majority and dissent all evaluated whether the officers' actions here were supported by founded suspicion (see 211 AD3d at 1330; id. at 1332-1333 [Aarons, J., dissenting]). These references to "founded suspicion" appear to have their genesis in a different Banks decision, issued by the Third Department, People v Banks (148 AD3d 1359, 1360 [3d Dept 2017]). In that decision, the Appellate Division cited to our 1995 decision in Banks for the erroneous proposition that officers must have a "founded suspicion that criminal activity is afoot" to justify extending the scope of the detention beyond the circumstances giving rise to a vehicular stop (Banks, 148 AD3d at 1360). But this Court in Banks held that the defendant in that case was illegally detained because "defendant's nervousness and the innocuous discrepancies in his and [a codefendant's] answers to the Trooper's questions regarding the origin, destination and timing of their trip did not alone, as a matter of law, provide a basis for reasonable suspicion of criminality" (85 NY2d at 562, citing People v Milaski, 62 NY2d 147, 156 [1984]).
Notably, in his post-suppression hearing memorandum, defendant conceded that the officer had probable cause to stop him for failing to stop at the stop sign, but argued that "[a] police officer m[a]y not artificially extend the detention" incident to a traffic stop "in order to investigate some unrelated crime or offense for which the officer does not have reasonable suspicion or probable cause." On appeal, both defendant and the prosecution refer to the lesser "founded suspicion" standard {**42 NY3d at 245}at different points in their briefing. As we reaffirm today, that is not the proper standard (see majority op at 
240). However, the parties also expressly discuss whether the officers had reasonable suspicion to prolong defendant's detention. Defendant, relying on Banks and Milaski, repeats the argument he asserted before the Appellate Division that
"[i]t was during the unlawful prolonged detention of defendant that the police officers removed property from defendant's pockets and found receipts from Popeye's and White Castle. It is well settled that apparent nervousness and inconsistent answers to police questioning about one's whereabouts do not alone provide a basis for reasonable suspicion of criminal activity upon which further detention is justified (see People v Banks, 85 NY2d 558, 562 [1995], cert denied 516 U.S. 868; People v Milaski, 62 NY2d 147, 156 [1984]). Thus, even if defendant was agitated or nervous and gave inconsistent answers to [the officer's] questioning of his whereabouts prior to the stop, such [*5]actions do not provide a founded suspicion of criminality to justify a prolonged detention of defendant. Consequently, the prolonged detention was unreasonable, and all evidence obtained as a result of the detention, including the heroin, must be suppressed and the indictment dismissed."
The prosecution, as before the Appellate Division, contends that
"defendant's detention for less than 30 minutes was based upon reasonable suspicion that criminal activity was afoot" because he "was seen outside the county by a seasoned police officer, he was out past his curfew, he possessed fast-food wrappers and receipts from restaurants outside the county date-stamped and timestamped that afternoon, he made up four false explanations about where he had been coming from, exhibited extremely nervous behavior, including sweating profusely and pacing, and finally, as time went on, the defendant became disorderly."
Similarly, before us, the prosecution maintains that, once defendant lied that "he [had come] from Rochester, officers had reasonable suspicion of criminality sufficient to detain him{**42 NY3d at 246} through [the parole officer's] investigation." Describing the escalating level of suspicion, the prosecution argues specifically:
"[Defendant's] first two lies—(1) that he had dropped off his cousin, and (2) that he had been driving around looking for his wife—could be explained away as [him] attempting to conceal mere technical parole violations. But once [he] lied that he was in Rochester—which would be its own parole violation because Rochester is outside Chemung County—the level of suspicion was elevated further. Officers now had additional reason to suspect he was lying to cover up not just a technical parole violation but an actual crime. Combined with his highly nervous demeanor and the fact that he was already on parole for narcotics offenses, this gave officers reasonable suspicion that criminal activity was afoot. This reasonable suspicion gave officers cause to detain him pending [the parole officer's] arrival."
The majority and I agree that defendant's detention must be justified by the more demanding reasonable suspicion standard—as opposed to founded suspicion. Thus, defendant, as the appellant, is not placed in a worse position by application of the correct standard here. Further, the prosecution argues that defendant's responses to the officer's permissible questioning eventually provided the officers with reasonable suspicion of criminal activity. County Court, confronted with defendant's claim that the officers lacked "reasonable suspicion or probable cause" to extend his detention, specifically ruled, adversely to defendant, on the constitutionality of this action. The Appellate Division affirmed, albeit under an erroneous founded suspicion standard. The Court's reminder that the proper standard is reasonable suspicion works in defendant's favor.
In sum, defendant and the prosecution at different points have referenced the correct legal standard, that standard is more favorable to defendant, and the lower courts decided adversely to defendant on the specific issue he raised.[FN1] Therefore, the LaFontaine/Concepcion rule is no bar to addressing the constitutionality of defendant's detention, and accordingly{**42 NY3d at 247} obviates any need for remittal (Concepcion, 17 NY3d at 195).
[*6]III.
On the merits, the record establishes that an officer familiar with defendant, his parole status, and his history of involvement with narcotics observed defendant's car driving in Pennsylvania—an apparent violation of a parole condition that defendant not leave Chemung County. The officer communicated his observations to another officer back in Syracuse, who also was familiar with defendant's criminal history and parole status. This second officer observed defendant drive back into Chemung County and followed him as he drove to a delicatessen before observing him run through a stop sign and drive into his own nearby driveway.[FN2] The officer then approached defendant, accompanied by another officer wearing a body cam. Defendant admitted he ran the stop sign, but then volunteered contradictory information about whether he had a curfew as a parolee before lying about his whereabouts in response to the officer's question about where he was coming from—accounts that changed several times once the officer responded that he knew defendant was not telling the truth based on what the officer observed once defendant exited the highway.
The officers' stop of defendant's vehicle was supported by probable cause based on their observations of a traffic violation (see People v Hinshaw, 35 NY3d 427, 430 [2020]). Ordinarily, a police officer would have no lawful basis to detain a driver suspected of a traffic violation for an extended duration based on inaccurate responses to questions about their whereabouts alone because, absent more, and "as a matter of law," such does not "provide a basis for reasonable suspicion of criminality" (Banks, 85 NY2d at 562, citing Milaski, 62 NY2d at 156). Here, however, the officers possessed reasonable suspicion of criminal activity given defendant's false answers, combined with the officers' personal knowledge of his criminal history, parole status, and apparent parole violations for travel outside Chemung County beyond his curfew time (see{**42 NY3d at 248} Rodriguez, 575 US at 354-355).[FN3] Put another way, if defendant was unknown to the officers, then "nervousness and the innocuous discrepancies in his . . . answers" (Banks, 85 NY2d at 562) would not have justified the officers' prolonged detention after resolving the Vehicle and Traffic Law violation because driving through a stop sign does not provide reasonable suspicion that the driver has committed or is about to commit a crime. But, here, defendant was known to be on parole for drug-related conduct and was observed violating at least two conditions of his parole. That highly relevant information provided the requisite level of suspicion to hold defendant until his parole officer arrived.
The parole officer's subsequent warrantless search of defendant's vehicle which led to the discovery of the illegal drugs was likewise constitutional because it was "rationally and reasonably related to the performance of the parole officer's duties" (People v McMillan, 29 NY3d 145, 148 [2017]). Specifically, the parole officer "has an obligation to detect and to prevent parole violations for the protection of the public from the commission of further crimes; . . . to prevent violations of parole and to assist [the parolee] to a proper reintegration into [their] community" (People v Huntley, 43 NY2d 175, 181 [1977]). The record establishes the parole officer acted reasonably to discharge these duties.
IV.
I would affirm the Appellate Division and end the matter now rather than remit for what will be a perfunctory determination by that Court that the officers were justified in both the stop and subsequent detention. Therefore, while I join fully the majority's articulation of the proper standard to be applied, I dissent from its decision to delay that application in defendant's case.
Chief Judge Wilson and Judges Garcia, Singas, Troutman and Halligan concur. Judge Rivera dissents and votes to affirm in an opinion.{**42 NY3d at 249}
Order reversed and case remitted to County Court, Chemung County, for further proceedings in accordance with the opinion herein.

Footnotes

Footnote 1:Defendant also sought to suppress his statements to law enforcement made after the justification for the traffic stop had been exhausted, as obtained in violation of his Miranda rights.

Footnote 2:The dissent's suggestion that the existence of reasonable suspicion to prolong the traffic stop can be decided by this Court in the first instance because that standard is more favorable to defendant than the incorrect standard applied by the courts below finds no support in LaFontaine, Concepcion, or their progeny (see People v Concepcion, 17 NY3d 192 [2011]; People v LaFontaine, 92 NY2d 470 [1998]). Because neither the suppression court nor the Appellate Division applied the reasonable suspicion standard to the facts, we are precluded from reaching that issue here (see CPL 470.15 [1]; 470.35 [1]; People v Ingram, 18 NY3d 948, 949 [2012]).
Whether reasonable suspicion exists is a mixed question of law and fact, and our review of that issue is limited to whether record support exists for the lower courts' determination (see People v Harrison, 57 NY2d 470, 477 [1982]). Contrary to the dissent, we express no opinion on the mixed question of whether reasonable suspicion existed, and we would not characterize the lower courts' review of this issue as "perfunctory" or a mere formality (dissenting op at 
248) given the important role of these courts in determining suppression issues in the first instance.
Footnote 1:The majority predicates its disagreement with my conclusion that LaFontaine and its progeny do not bar our consideration of whether the police had reasonable suspicion before extending the seizure exclusively on the second of these three reasons (see majority op at 
241 n 2). But, as the above shows, my conclusion follows from all three premises taken together.

Footnote 2:Defendant has never suggested that a different analysis controls because he had parked in his driveway when the officers approached him. Therefore, the relevance of this fact to his challenge is not before us.

Footnote 3:This question is not a "mixed" one, as the majority asserts (see majority op at 
241 n 2) because neither party disputes the facts found below or inferences to be drawn therefrom, and the only issue is whether, "as a matter of law, the officers' observations could . . . form the 'minimum showing necessary to establish' a reasonable suspicion that defendant had committed or was about to commit a crime" (People v Messano, 41 NY3d 228, 235 [2024], quoting People v McRay, 51 NY2d 594, 601 [1980]).