People v Butler (2025 NY Slip Op 04052)

People v Butler

2025 NY Slip Op 04052

Decided on July 3, 2025

Appellate Division, Third Department

Ceresia, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 3, 2025

110948

[*1]The People of the State of New York, Respondent,
v
Devon T. Butler, Appellant.

Calendar Date:June 5, 2025

Before: Clark, J.P., Pritzker, Lynch, Ceresia and Fisher, JJ.

Clea Weiss, Rochester, for appellant.
Kirk O. Martin, Special Prosecutor, Owego (Glenn D. Green of New York Prosecutors Training Institute, Albany, of counsel), for respondent.

Ceresia, J.
Appeal from a judgment of the County Court of Broome County (Joseph Cawley, J.), rendered September 5, 2018, convicting defendant upon his plea of guilty of the crimes of criminal possession of a controlled substance in the third degree and tampering with physical evidence.
This matter returns to us for a second time (196 AD3d 28 [3d Dept 2021], revd 41 NY3d 186 [2023]). By way of brief background, during a traffic stop, defendant was asked to exit his vehicle and a police officer used a canine to sniff first the vehicle and then defendant's person. Upon sniffing defendant by "put[ting] his nose in [defendant's] groin/buttock region," the canine alerted for the presence of narcotics and defendant fled (id. at 31 [internal quotation marks omitted]). The police gave chase, apprehended defendant and, shortly thereafter, discovered a discarded package of heroin along the route of his flight. After being indicted on various drug charges, defendant moved to suppress the heroin as well as statements that he had made to the police. County Court denied the motion, finding that the canine sniff of the vehicle was supported by the requisite founded suspicion of criminality, the sniff of defendant's body was not a constitutionally protected search, defendant voluntarily abandoned the drugs and his postarrest statements were voluntary.
This Court affirmed on different grounds, concluding that a canine sniff of the body does constitute a search and that the standard necessary to effectuate such a search is reasonable suspicion (196 AD3d at 31). This Court also found that the reasonable suspicion benchmark was satisfied (id. at 31-32). Upon appeal, the Court of Appeals confirmed that a canine sniff of the body is indeed a search under the Fourth Amendment (41 NY3d 186, 189-198 [2023]). However, pursuant to the LaFontaine rule, the Court of Appeals held that this Court improperly decided the legal standard for the search before County Court had done so, and remitted the case to County Court to rule upon the correct standard, whether that standard was met and, if not, whether the drugs were abandoned under the law (id. at 199; see CPL 470.35 [1]; People v LaFontaine, 92 NY2d 470, 474 [1998]). County Court then held that reasonable suspicion governs and that it was present here. Defendant appeals.
This Court is now called upon to determine the proper legal standard applicable to a canine sniff search of a person's body. We begin by noting that, when examining canine sniff searches performed in various settings, from a vehicle's exterior to a shipping facility to an apartment building hallway, the Court of Appeals has applied the four-tiered De Bour framework (see People v De Bour, 40 NY2d 210 [1976]) of graduated levels of suspicion corresponding with levels of permissible police intrusion (see People v Devone, 15 NY3d 106, 113 [2010]; People v Offen, 78 NY2d 1089, 1091 [1991]; People v Dunn, 77 NY2d 19, 26 [1990], cert denied 501 US 1219 [1991]). As indicated in [*2]that seminal case, the De Bour analysis "requires a weighing of the government's interest against the encroachment involved with respect to an individual's right to privacy and personal security" (People v De Bour, 40 NY2d at 215; see People v Davis, 204 AD3d 1072, 1074 [3d Dept 2022], lv denied 38 NY3d 1032 [2022]).
With that in mind, a review of the manner in which the Court of Appeals has applied De Bour in the context of canine sniff searches is instructive. The Court has cited to factors such as the utility to law enforcement of a narcotics-sniffing dog (see People v Devone, 15 NY3d at 113; People v Dunn, 77 NY2d at 26), the discriminate nature of this particular tool in detecting only narcotics (see People v Dunn, 77 NY2d at 26), the level of intrusiveness of the canine sniff under the particular circumstances (see People v Devone, 15 NY3d at 113; People v Dunn, 77 NY2d at 26) and the degree to which an individual has a reasonable expectation of privacy in those circumstances (see People v Devone, 15 NY3d at 113). Analyzing these cases, we observe that the first two factors mentioned above are common to all canine sniff searches. That is, the narcotics-sniffing dog is unquestionably a highly valuable tool to law enforcement no matter the setting, and the dog's sui generis ability to detect only the presence of contraband without revealing the existence or nature of other personal belongings is a feature of every canine sniff search. Therefore, while important, it rationally follows that these cannot be the deciding factors when considering where on the De Bour spectrum a particular sniff search will lie. Instead, it is the latter two factors — the extent of intrusion and the degree of the privacy expectation — that can logically be said to hold greater weight, as they are necessarily unique to each situation. Illustrative of this is the fact that these two factors appear to have been key to the Court of Appeals' holdings that the level-2 founded suspicion standard is required during a canine sniff of a vehicle's exterior during a traffic stop (see People v Dunn, 77 NY2d at 26), while the level-3 reasonable suspicion standard applies to an apartment building's common hallway (see People v Devone, 15 NY3d at 113).
Against that backdrop, we focus our attention on the intrusiveness of a canine sniff search of the body and the degree of privacy reasonably to be expected in such circumstances, mindful that the Court of Appeals has already spoken about these issues in this very case. With regard to intrusiveness, the Court clearly underscored "the objectively undignified and disconcerting experience of having an unfamiliar animal place its snout and jaws in close proximity to — if not direct contact with — vulnerable parts of our bodies" (41 NY3d at 196-197). As for privacy, the Court emphasized that "[n]o right is held more sacred, or is more carefully guarded, than the right of every individual to the possession and control of his own person, free [*3]from all restraint or interference of others" (id. at 195 [internal quotation marks, ellipsis and citation omitted]). With that guidance, we acknowledge that a canine sniff of the body is far more intrusive than that of a vehicle exterior or common hallway, and an individual has a correspondingly greater expectation of privacy in one's own body than in those settings. Indeed, when it comes to canine sniff searches, it would be difficult to imagine one more intrusive or involving a more significant privacy right than the one at issue here. Accordingly, we conclude that the serious "intrusion on personal privacy, security, and dignity" that accompanies a canine sniff of the body can only be justified at DeBour level 4 — namely, upon probable cause to believe that the target of the sniff search has committed a crime (id. at 196).[FN1]
In light of the foregoing, and given the fact that County Court only evaluated the evidence under the lesser standard of reasonable suspicion, we are constrained to remit this case to that court for a determination of whether the police had probable cause to perform the canine sniff search of defendant's body (see People v Thomas, 42 NY3d 236, 241 [2024]), thereby triggering the necessity of either a search warrant or an exception to the warrant requirement (see Katz v United States, 389 US 347, 357 [1967]; Cicci v Chemung County, 122 AD3d 1181, 1182 [3d Dept 2014], lv dismissed & denied 25 NY3d 1062 [2015]).[FN2] Should County Court determine that probable cause was lacking, the court must then decide two additional matters: first, whether defendant's abandonment of the heroin "was spontaneous and precipitated by the illegality or whether it was a calculated act not provoked by the unlawful police activity and thus attenuated from it" (People v Wilkerson, 64 NY2d 749, 750 [1984]; see People v White, 153 AD3d 1369, 1370 [2d Dept 2017], lv denied 30 NY3d 1065 [2017]; People v Pirillo, 78 AD3d 1424, 1425-1426 [3d Dept 2010]), and second, whether defendant's subsequent statements to the police were also sufficiently attenuated from any unlawful police conduct (see People v Cook, 206 AD3d 1236, 1239-1240 [3d Dept 2022]; People v Swain, 168 AD3d 1130, 1132 [3d Dept 2019], lv denied 34 NY3d 938 [2019]).
Clark, J.P., Pritzker, Lynch and Fisher, JJ., concur.
ORDERED that the judgment is reversed, on the law, and matter remitted to the County Court of Broome County for further proceedings not inconsistent with this Court's decision.

Footnotes

Footnote 1: We recognize that, in this Court's previous ruling in this case, it was held that the canine sniff search of the body was subject to the lower level-3 reasonable suspicion standard (196 AD3d at 31). For the reasons set forth herein, we now disavow that ruling.
Footnote 2: Defendant's additional argument relative to the lawfulness of the vehicle sniff search as it impacts a probable cause assessment has been rendered academic by virtue of our remittal to County Court on this issue.